**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**

| | |
|---|---|
| IN RE PETITION OF GUILLERMO LUIS TOFONI FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. 4:25-CV-313 |

**TOURPRODENTER, LLC'S EXPEDITED MOTION FOR A PROTECTIVE**
**ORDER AND INCORPORATED MEMORANDUM OF LAW**

Tourprodenter, LLC ("Tourprodenter"), by and through undersigned counsel, respectfully

moves this Court pursuant to Federal Rule of Civil Procedure 26(c)(1) for entry of the protective

order attached as **Exhibit "1,"** to govern the use and dissemination of Tourprodenter's materials

obtained through this proceeding, and to impose reasonable remedial measures to address prior

dissemination beyond what this Court initially authorized. In support, of this Expedited Motion

for Protective Order, Tourprodenter states as follows:

**INTRODUCTION**

Applicant Guillermo Tofoni ("Tofoni") sought discovery in this proceeding that includes

highly sensitive financial information concerning Tourprodenter. In his Petition, Tofoni

represented that he sought this Court's assistance to obtain discovery for use in a breach of contract

proceeding against the Argentine Football Association ("AFA") pending in Argentina (the "AFA

Case"). This Court granted that request *ex parte* based on the representations contained in the

Petition and authorized discovery for the limited purposes described therein.

However, Tofoni's conduct in this proceeding and in a parallel proceeding in the United

States District Court for the District of Delaware demonstrates that information obtained through

§1782 discovery has been used for purposes unrelated to the AFA Case. Specifically, Tofoni

EXHIBIT 1 TO MOTION TO INTERVENE

obtained Tourprodenter's banking records through subpoenas issued to several financial institutions, and rather than limiting the use of that discovery to the AFA Case, he used that information to advance a separate criminal complaint in Argentina against Tourprodenter's principals and to disseminate Tourprodenter's banking information to multiple Argentine media outlets.

Because the discovery in this matter was authorized by this Court for the limited purposes described in the Petition, the use of such materials outside the AFA Case undermines the limitations under which the Court's authority was invoked. Additionally, since Tofoni's conduct demonstrates that information provided by Synovus Bank has already been misused, there is a substantial risk that the same misuse will continue to occur absent appropriate safeguards.

Accordingly, Tourprodenter seeks a protective order limiting the use of any information obtained through this §1782 proceeding solely to the AFA Case, prohibiting disclosure to the media or other third parties; requiring reasonable remedial measures to address prior dissemination; and ordering the return or destruction of all documents and information not used in the AFA Case.

## BACKGROUND

**A.    Tofoni's §1782 Petition in Georgia.**

1.    Tofoni alleges that on Mar 4, 2021, he signed a contract with AFA that gave him the exclusive rights to organize friendly soccer matches for the Argentine men's national team from November 1, 2022 to December 31, 2030, along with 30% of each match's profits. *See* (ECF No. 1-3) at 2-3. Tofoni further claims that AFA breached this contract by organizing friendly soccer matches through other agents or otherwise without his involvement. *Id.* at 3.

EXHIBIT 1 TO MOTION TO INTERVENE

2.      In connection with this alleged breach of contract, in November 2023, Tofoni filed a lawsuit against AFA—the AFA Case—in a civil Argentinian court.[1] *Id.* at 2. In this proceeding, Tofoni alleges that Tourprodenter acted as AFA's collection agent for AFA's organization of a friendly soccer match in Beijing, China, in which AFA allegedly contracted with two Chinese companies in breach of Tofoni's contract with AFA. *Id.* at 3.

3.      On October 6, 2025, Tofoni filed in this case his *Ex Parte* Petition for Judicial Assistance in Obtaining Evidence for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782. *See* (ECF No. 1) (the "Petition"). Tofoni represented to this Court that he needed to subpoena Synovus Bank, or in the alternative, First Commercial Bank, a division of Synovus Bank, to obtain evidence for use in the AFA Case, including Tourprodenter's financial information. *Id.* at 4-7.

4.      In particular, Tofoni's contemplated subpoena contained four sweeping document requests directed at obtaining Tourprodenter's financial information. First, he demanded documents sufficient to identify every account of any type held by Tourprodenter and its "affiliated persons," effectively seeking a comprehensive map of banking relationships. *See* (ECF No. 1-10) at 6, ¶ 1. Second, he sought "all documents," without limitation, concerning any individuals authorized to operate any such accounts. *Id.* at 6, ¶ 2. Third, he demanded "all documents" relating to the opening of every account, including account-opening forms, correspondence, KYC and due diligence files, emails, and internal notes—requests that would have required the production of entire onboarding and compliance files across multiple accounts. *Id.* at 6, ¶ 3. Fourth, he sought "all documents" relating to any transactions in any such accounts, including every wire or transaction referencing a list of third parties, and required production sufficient to identify transaction amounts and origin and destination accounts—an open-ended request that would have

---

[1]      The AFA Case is registered in the Argentinian Civil Court under number CIV 084904/2023.

3

EXHIBIT 1 TO MOTION TO INTERVENE

swept in complete transaction histories and supporting documentation across multiple entities and time periods. *Id.*, at 6, ¶ 4.

5.      Tofoni supported his Application with the sworn declaration of Argentine attorney Francisco Castex, of the law firm Castex Pauls Abogados, *see* (ECF No. 1-4) (the "Castex Decl."), and Georgia attorney Scott R. Grubman, *see* (ECF No. 1-6) (the "Grubman Decl."). The Castex Declaration also states that the information to be obtained from the banks is for use in the AFA Case. *See* Castex Decl., ¶¶ 5, 18-26.

6.      On October 7, 2025, the Court granted Tofoni's Petition. Additionally, the Court appointed Scott Grubman as "Commissioner of the Court with the power to issue a subpoena to Synovus Bank for the limited purposes described in the Petition." *See* (ECF No. 3) at ¶ 2.

**B.      Parallel §1782 Petition in Delaware.**

7.      At the same time, Tofoni filed a parallel § 1782 petition in the United States District Court for the District of Delaware, *In Re Petition of Guillermo Luis Tofoni for Judicial Assistance Pursuant to 28 U.S.C. § 1782*, Case No. 1:25-cv-01217, where he purportedly intended his Petition to obtain evidence for use in the same AFA Case ("Delaware §1782"). *See* Petition attached as **Exhibit "2."**

8.      On October 10, 2025, the Delaware District Court issued an Order granting Tofoni's petition. Tofoni issued his initial subpoenas to Citigroup, Inc., Bank of America Corp., and JPMorgan Chase & Co. *See* October 10, 2025 Court Order attached as **Exhibit "3."**

9.      On January 20, 2026, Tofoni moved *ex parte* to reopen the case and for authorization to issue additional subpoenas to several banks, once again for alleged use in the AFA Case. *See* Motion attached as **Exhibit "4."**

EXHIBIT 1 TO MOTION TO INTERVENE

10.     On January 21, 2026, the Court granted Tofoni's request to issue additional subpoenas to PNC Bank, N.A., First Citizens Bank & Trust Co., Wells Fargo Bank, N.A., The Bank of New York Mellon, and City National Bank. *See* January 21, 2026 Court Order attached as **Exhibit "5."**

**C.     Use of §1782 Discovery Outside the Authorized Foreign Proceeding**

11.      To date, Tofoni has not filed the information obtained from Synovus Bank and the other financial institutions in the AFA Case. *See* Declaration of Maximiliano Rusconi ¶ 9, attached as **Exhibit "6"** (the "Rusconi Decl."). Rather, he has used the information for matters unrelated to that foreign proceeding.

12.     For example, on or about December 30, 2025, Tofoni filed a new criminal case, Case No. 66191/2025, against Tourprodenter's principals, Ms. Erica Gabriela Gillette and Mr. Javier Faroni. In that criminal complaint, Tofoni included banking and financial information attributed to Tourprodenter, including references to bank accounts and transfers of funds across various financial institutions in the United States. Specifically, Tofoni referred to Tourprodenter's bank accounts at Synovus Bank. *See* Rusconi's Decl. at ¶ 5.

13.     On February 19, 2026, Tofoni submitted a filing before the Argentine courts in which he stated that the financial information referenced in his complaint was obtained through a "discovery" proceeding he initiated before federal courts in the United States. In that same submission, Tofoni further asserted that "U.S. judicial authorities" had determined that his claims were "legally cognizable," which, according to him, constitutes a prior recognition of his standing and of the existence of a potential direct pecuniary harm. *Id.* at ¶ 6.

14.     On March 3, 2026, Tofoni filed a motion seeking leave to amend his criminal complaint. Specifically, Tofoni sought to submit bank records obtained from PNC Bank through

EXHIBIT 1 TO MOTION TO INTERVENE

the Delaware §1782, including unredacted account opening documents, Tourprodenter's signature card, and bank statements. *Id.* at ¶ 7.

15.    As of March 11, 2026, Tofoni has not filed any financial records of Tourprodenter, nor any other documents that he has identified as having been obtained through this proceeding or through the Delaware §1782. *See* Rusconi's Declaration at ¶ 9.

16.    Additionally, on February 22, 2026, the Argentine media outlet La Nación published an article accusing Tourprodenter of engaging in suspicious transactions on behalf of AFA.[2] The article reported that "Justice in the United States" had ordered Tourprodenter's banks to disclose its financial information—suggesting the existence of a criminal investigation in the United States involving Tourprodenter—and stated that the information had been obtained from materials produced in this § 1782 proceeding. *See* Certified Translation of February 22, 2026 La Nacion Article attached as **Exhibit "7."**

17.    Similarly, on February 27, 2026, the Argentine media outlet "Infobae.com" published an article publicly disseminating Tourprodenter's bank information and noting that the information had been obtained from Tofoni.[3] *See* Certified Translation of February 27, 2026 La Nacion Article attached as **Exhibit "8."** On the same day, La Nación published a similar article,

---

[2]    *See* La Nación, Aparecen Transferencias a Otras Dos Empresas Fantasma y Los Desvíos ya Superan los US$50 Millones, https://www.lanacion.com.ar/politica/aparecen-transferencias-a-otras-dos-empresas-fantasma-y-los-desvios-ya-superan-los-us50-millones-nid21022026/    (Last visited March 16, 2026).

[3]    Infobae.com, Exclusivo: Hallaron Otro Banco en EEUU Que Manejó Fondos de La AFA y Giró USD 3 Millones a Empresas Fantasma, https://www.infobae.com/politica/2026/02/27/exclusivo-hallaron-otro-banco-en-eeuu-que-manejo-fondos-de-la-afa-y-giro-usd-3-millones-a-empresas-fantasma/ (last visited, March. 16, 2026).

EXHIBIT 1 TO MOTION TO INTERVENE

noting that Tourprodenter's banking information had been obtained from Tofoni's § 1782 proceedings in the United States.[4]

18.     On March 11, 2026, undersigned counsel emailed counsel for Tofoni advising that Tourprodenter intends to intervene in this matter based on Tofoni's misuse of information obtained through these proceedings, and requesting a conferral regarding Tourprodenter's anticipated motions to intervene and for a protective order. That same day, however, Tofoni appeared in a YouTube-broadcast media interview[5] in which he publicly discussed and boasted about information obtained through the Section 1782 proceedings. The parties subsequently held a Zoom conferral on March 16, 2026, at 2:00 p.m.

## <u>MEMORANDUM OF LAW</u>

## I.     GOOD CAUSE EXISTS FOR ENTRY OF A PROTECTIVE ORDER

### A.     Legal Standard.

Federal Rule of Civil Procedure 26(c)(1) authorizes the Court to issue protective order to protect a person from annoyance and embarrassment. *See* Fed. R. Civ. Pro 26 (c)(1). "A court may enter a protective order on a party's motion "for good cause shown."" *Smith v. GEO Grp., Inc*., Case No. 5:16-CV-186, 2019 U.S. Dist. LEXIS 99437, *3, 2019 WL 2471824 (M.D. Ga. June 13, 2019). "The good cause standard "requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential."" *Wooten v. LaSalle Se. LLC*, 2025 U.S. Dist. LEXIS 179825, *4, 2025 LX 348845,

---

[4]     La Nación, Está Registrada en El PNC Bank y Pertenece a La Empresa Tourprodenter; Los Desvíos a Sociedades En Miami Sin Actividad Rozan Los US$55 Millones, https://www.lanacion.com.ar/politica/afagate-aparecio-otra-cuenta-de-javier-faroni-en-eeuu-que-desvio-mas-de-us3-millones-a-cinco-nid27022026/ (last visited, March 16, 2026).

[5]     Guillermo Tofoni aseguró que la AFA no ingresó 400 millones de dólares de amistosos de la Selección, https://www.youtube.com/watch?v=BOpSMRbRyvg (last visited March 16, 2026).

7

EXHIBIT 1 TO MOTION TO INTERVENE

2025 WL 2648242 (M.D. Ga. Sept. 15, 2025) (citing *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001)). "Indeed, "the most critical Rule 26(c) factor" is "balancing the potential harm to the [party seeking the protective order] against the interests of the other parties in the case."" *Id.* (citing *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251 (11th Cir. 2020)). "Courts have found that the existence of a protective order "minimize[s] any harm that might otherwise result from compelling disclosure of bank examination information."" *In re Wilmington Trust Sec. Litig.,* 2016 U.S. Dist. LEXIS 189794, *36 (D. Del. Aug. 16, 2016) (quoting *In re Subpoena Served Upon Comptroller of Currency ("Fleet")*, 967 F.2d 630, 633, 296 U.S. App. D.C. 263 (D.C. Cir. 1992)). Courts have held in other districts that "[w]here the requesting party establishes a substantial need, courts will look to whether procedures exist to mitigate any burden or prejudice to the nonparty. *See* Rule 45(c)(3)(C) (providing that the Court may order production "only upon specified conditions"). In particular, courts often order that the information be produced subject to a protective order." *Sci. Games Corp. v. AGS LLC*, Case No. 2:17-cv-00343, 2017 U.S. Dist. LEXIS 109488, *7, 2017 WL 3013251 (D. Nev. Jul. 13, 2017).

In addition, "Rule 26(c)(1), "gives the district court discretionary power to fashion a protective order. "" *Gaddy v. Terex Corp.*, 2016 U.S. Dist. LEXIS 31087, *5, 2016 WL 1047011 (N.D. Ga. Mar. 10, 2016) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir. 1985.)) "Moreover, "the permissive language of section 1782 vests district courts with discretion to grant, limit, or deny discovery."" *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191, 1999 U.S. App. LEXIS 6970, *6, (3rd Cir. 1999) (citing In *re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997.)) Courts exercising jurisdiction under §1782 routinely rely on this authority to tailor discovery obtained through judicial assistance. *See Sanchez v. Adverit Int'l LLC,* 2025 U.S. Dist. LEXIS 147075, *20, 2025 LX 361233, 2025 WL 2171607 (S.D. Fla. Jul. 31, 2025) (quoting *In re*

8

EXHIBIT 1 TO MOTION TO INTERVENE

*Accent Delight Int'l Ltd.*, 869 F.3d 121, 133 (2d Cir. 2017)) ("[E]ven if [§ 1782's] statutory requirements are met, a grant of discovery under [§] 1782 remains within the discretion of the district court."); *see* also *Esses v. Hanania (In re Esses)*, 101 F.3d 873, 876, 1996 U.S. App. LEXIS 31156, *8 (2d Cir. 1996) ("Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems."); *In re Merck & Co.,* 197 F.R.D. 267, 270, 2000 U.S. Dist. LEXIS 17497, *7 (M.D.N.C. 2000) (same); *see* also *In re Malev Hungarian Airlines*, 964 F.2d 97, 99 (2d Cir. 1992) (noting that a district court has broad authority under section 1782 and Fed. R. Civ. P. 26 to impose reasonable limitations and conditions upon discovery). Where there is a concern that materials obtained through § 1782 discovery may be disseminated beyond the scope of their authorized use, courts may impose reasonable measures to ensure that such materials remain subject to the limitations under which the Court granted the application. *Id.* ("If a district court is concerned that granting discovery under § 1782 will engender problems in a particular case, it is well-equipped to determine the scope and duration of that discovery.")

**B.**  **Good Cause Exist Because The §1782 Discovery Has Been Used Outside the Authorized Purpose.**

Tourprodenter's confidential financial information obtained through subpoenas in connection with both this proceeding and the Delaware §1782, including the information obtained from the Synovus Bank, has already been used for purposes unrelated to the AFA Case. This conduct demonstrates a concrete and ongoing risk that sensitive financial information obtained through Tofoni's §1782 Petition could again be misused and publicly disseminated unless appropriate safeguards are ordered by the Court. *See The Icon at Panorama, LLC v. Southwest Reg'l Council of Carpenters*, Case No. 2:19-cv-00181, 2020 U.S. Dist. LEXIS 16200, *7, 2020 LX 11008 (C. D. Cal. Jan. 31, 2020) (Disclosure of sensitive, confidential and proprietary business

9

EXHIBIT 1 TO MOTION TO INTERVENE

and financial information in civil discovery should be done only under properly fashioned protective orders.)

The public dissemination of Tourprodenter's information is particularly troubling because the materials at issue consist of banking records, which courts routinely recognize as deserving heightened protection from disclosure. *See Richards v. Superior Court,* 86 Cal. App. 3d 265, 150 Cal. Rptr. 77 (1978) (restricting disclosure of financial statements only to counsel and only for the purpose of the instant lawsuit); *see* also *Eagle Air Med Corp. v. Sentinel Air Med. All*., 2018 U.S. Dist. LEXIS 95723, *3 (D. Nev. June 6, 2018) ("Protective orders […] are "the primary means by which the courts ensure full disclosure of relevant information, while still preserving the parties' (and third parties') legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly disseminated."")

### C.      Tourprodenter Has Significant Privacy Interest in the Financial Information Sought by Tofoni.

"[A] party's interest in the confidentiality of financial information may be adequately addressed via a protective order." *RePet, Inc. v. Zhao*, 2016 U.S. Dist. LEXIS 197359, *16, 2016 LX 83944, 2016 WL 11634744 (C.D. Cal. Nov. 3, 2016). The subpoena served on Synovus Bank, among other things, allowed Tofoni to obtain records relating to Tourprodenter's savings, checking, or investment accounts, documents concerning the persons authorized to operate those accounts, due diligence materials, and wire transfer records. *See* (ECF No. 1-10), Exhibit 4 at 6. Courts have recognized that financial records implicate significant privacy interests because "public disclosure of financial information may be personally embarrassing and highly intrusive." *See Fraternal Order of Police, Lodge No. 5 v. City of Phila*., 812 F.2d 105, 115 (3d Cir. 1987) (quoting *Barry v. City of New York*, 712 F.2d 1554, 1561 (2d Cir. 1983)); *see also Cent. States Publ'g, Inc. v. FBI*, No. 83-2694, 1985 U.S. Dist. LEXIS 13556, at *6 (E.D. Pa. Nov. 25, 1985)

EXHIBIT 1 TO MOTION TO INTERVENE

(noting that the proposition that a privacy interest is legally protected cannot be seriously contested).

Here, the bank records obtained from Synovus Bank reveal sensitive details regarding Tourprodenter's financial affairs, including the movement of funds through its accounts as well as the nature of its financial dealings with third parties. The public dissemination of such materials, particularly without context, can easily create misleading impressions regarding otherwise routine business transactions. In fact, the risk of embarrassment is not speculative. Banking information attributed to Tourprodenter has already appeared in Argentine media outlets suggesting wrongdoing by Tourprodenter and its principals. The same information has also been used in connection with the new criminal complaint filed by Mr. Tafoni against Tourprodenter's principals, as well as other defendants. *See* Rusconi's Declaration at ¶ 5. The publication of such information in the media demonstrates how financial records can be used to create public suspicion or controversy even where no wrongdoing exists.

Under these circumstances, Tourprodenter's significant privacy interest in its financial records, together with the demonstrated risk that such records may again be publicly disseminated, Tourprodenter moves this court for the entry of a protective order limiting the use and disclosure of any financial materials produced in this proceeding. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994) (privacy concerns are assuaged "if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know.")

**D.    A Protective Order Is Necessary to Prevent Further Misuse of Financial Information.**

Courts regularly use protective orders to mitigate the risks associated with the disclosure of sensitive financial information obtained through subpoenas directed to financial institutions.

11

EXHIBIT 1 TO MOTION TO INTERVENE

Protective measures help minimize the harm that might otherwise result from the disclosure of confidential banking information. *In re Wilmington Trust Sec. Litig.,* 2016 U.S. Dist. LEXIS 189794, *36. By imposing reasonable restrictions on the use and dissemination of discovery materials, courts ensure that sensitive information obtained through judicial process remains confined for the purposes for which it was sought and does not become the subject of public dissemination or collateral disputes.

To balance Petitioner's asserted need for discovery with Tourprodenter's legitimate privacy and confidentiality interests, the Court should enter a protective order governing the use and dissemination of any materials produced in this proceeding. Specifically, Tourprodenter respectfully requests that the Court enters the order attached as **Exhibit "1"** ensuring that: (i) any information produced pursuant to subpoenas issued in this proceeding be used solely for purposes of the AFA; (ii) such materials shall not be disclosed to members of the media or to any third party not involved in the AFA; (iii) Petitioner undertake reasonable efforts to retrieve or secure the return or destruction of materials that have already been disseminated outside the authorized scope of use; and (iv) all banking information produced pursuant to this proceeding shall be returned to the producing party or destroyed if not used in the AFA. *See Cunningham v. Jordan*, 2024 U.S. Dist. LEXIS 42737, *5, (N.D. Ga. Feb. 20, 2024) (court ordered Plaintiff to immediately and permanently delete and destroy any and all private banking information that he has or will acquire by serving subpoenas on non-parties in this case.); *Wicker v. Prabhu Paramatma*, 2020 U.S. Dist. LEXIS 266127, *9, 2020 WL 13539106 (N.D. Ga. Mar. 16, 2020) (directing the parties to meet and confer, and propose to the Court a consent protective order limiting disclosure of bank account records.)

12

EXHIBIT 1 TO MOTION TO INTERVENE

These safeguards would ensure that financial information obtained through this Court's process is not again publicly disseminated or used for purposes unrelated to the AFA Case, for which it was purportedly sought.

## II.    THE COURT SHOULD ORDER AN EXPEDITED BRIEFING SCHEDULE

Under Middle District of Georgia Local Rules 7.2 and 7.3, responses to a motion shall be filed within twenty-one (21) days of the motion, and replies shall be filed within fourteen (14) days of the response. *See* M.D. Ga. LR 7.2; M.D. Ga. LR 7.3. However, the Court has discretion to alter the time for briefing, because, like any court, it "has inherent authority to manage its own docket" which "includes the authority to set deadlines[.]" *Medley v. United States*, No. 5:21-CV-206, 2022 U.S. Dist. LEXIS 59367, at *4 (M.D. Ga. Mar. 31, 2022) (quoting *Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 1009), and *Gomez v. Trustees of Harvard Univ.*, 676 F. Supp. 13, 15 (D.D.C. 1987)). Accordingly, the Court may order expedited briefing on motions. *See, e.g.*, *Leslie v. Markling*, No. 4:25-CV-174, 2025 U.S. Dist. LEXIS 172122, at *5 (M.D. Ga. Sep. 4, 2025) (Land, J.) (noting that briefing on a renewed motion for summary judgment could follow an expedited schedule).

Because Tofoni has already disseminated Tourprodenter's confidential information to members of the Argentine media—and there is every reason to believe he will continue doing so absent prompt judicial intervention—good cause exists to expedite briefing on this motion. An expedited schedule will allow the Court to address Tourprodenter's objections before additional disclosures occur and before the subpoena process is further used as a vehicle to obtain and publicize sensitive information for improper purposes.

Accordingly, Tourprodenter respectfully requests that any response to this motion be due within seven (7) days of filing, with any reply due within four (4) days thereafter.

13

EXHIBIT 1 TO MOTION TO INTERVENE

## **CONCLUSION**

Based on the foregoing points and authorities, Tourprodenter respectfully requests that the Court enter an Order: (i) granting Tourprodenter's Motion; (ii) issuing the Protective Order attached as **Exhibit "1"**; and (iii) grant any and all further relief the Court deems just and proper.

DATED:                                              Respectfully submitted,

**Clark Hill PLC**
3630 Peachtree Road N.E., Suite 700
Atlanta, GA 30326
Telephone: (470) 845-0207

By: */s/ DRAFT*
Lewis P. Perling (Georgia Bar No. 572379)
Attorney Email: lperling@clarkhill.com

**DIAZ REUS INTERNATIONAL LAW FIRM**
100 Southeast Second Street, Suite 3400
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

By: */s/ DRAFT*
Michael Diaz, Jr. (Fla. Bar No. 606774)
Attorney Email: mdiaz@diazreus.com
(admitted *pro hac vice*)
Javier Coronado Diaz (Fla. Bar No. 1047848)
Attorney Email: jcoronado@diazreus.com
(admitted *pro hac vice*)
Gabor Gazso von Klingspor (Fla. Bar No. 1058977)
Attorney Email: ggazso@diazreus.com
(admitted *pro hac vice*)
John Q. Foster (Fla. Bar No. 1059167)
Attorney Email: jfoster@diazreus.com
(admitted *pro hac vice*)

*Counsel for Tourprodenter, LLC*

14

EXHIBIT 1 TO MOTION TO INTERVENE

## <u>CERTIFICATE OF CONFERRAL</u>

The undersigned hereby certifies that on March 11 and 16, 2026 Tourprodenter's counsel and counsel for Tofoni conferred regarding the relief sought herein through email and Zoom videoconference.

<u>*/s/ Lewis. P. Perling*</u>
Lewis. P. Perling

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed on                    with the Court's CM/ECF system, which will serve a true and correct copy thereof on all counsel of record.

<u>*/s/ Lewis. P. Perling*</u>
Lewis. P. Perling

15

EXHIBIT 1 TO MOTION TO INTERVENE

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**

| | |
|---|---|
| **IN RE APPLICATION OF GUILLERMO LUIS TOFONI FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** | Case No. 4:25-cv-00313-CDL |

### [PROPOSED] PROTECTIVE ORDER

The Court, having considered Intervenor Tourprodenter, LLC's ("Tourprodenter") Expedited Motion to Quash Subpoenas and for Protective Order (the "Motion"), and for good cause shown, it is **HEREBY ORDERED** this _____ day of _____ 2026 that:

1.      The Motion is **GRANTED**.

2.      Tourprodenter seeks entry of this Protective Order governing the treatment of certain information that has been obtained or may be obtained by Petitioner, Guillermo Luis Tofoni ("Tofoni") (collectively, the "Parties"), pursuant to his *Ex Parte* Application of Guillermo Luis Tofoni for Judicial Assistance Pursuant to 28 U.S.C. § 1782. (ECF No. 1). Good cause exists under Federal Rule of Civil Procedure 26(c) for the protections set forth below to preserve the confidentiality of information that is commercially sensitive, confidential, competitive, and/or proprietary, and to prevent misuse or public dissemination of such information.

3.      This Order governs all documents produced or that may be produced pursuant to subpoenas issued in this proceeding concerning Tourprodenter's bank accounts and other financial information, including materials produced or that may be produced by Synovus Bank, as well as its subsidiaries and/or parent companies (collectively, "Tourprodenter's Materials").

1

EXHIBIT 1 TO MOTION TO INTERVENE

4. The provisions of this Protective Order shall apply to (1) the Parties to this action including, but not limited to, their employees, former employees, officers, directors, agents, representatives, subsidiaries, affiliates, related entities, assigns, successors-in-interest, any individuals or companies retained by any of the parties, and/or all persons acting or purporting to act on their behalf; (2) court reporters; (3) third parties as provided in this Order; and (4) any person who agrees to be bound by the terms of this Order.

5. Tourprodenter's Materials shall be used solely for purposes of the civil lawsuit filed by Tofoni against the Argentine Football Association ("AFA"), with civil case number CIV 084904/2023 (the "AFA Case"), and for no other purpose, unless otherwise authorized by this Court.

6. Tourprodenter's Materials shall not be filed on any public docket. To the extent any Party seeks or is required to file Tourprodenter's Materials in any court, arbitration, administrative proceeding, or other tribunal, such filing shall be made under seal in accordance with the applicable rules and procedures of the forum, and the filing Party shall take all reasonable steps to ensure that Tourprodenter's Materials are not publicly disclosed, including, where appropriate, filing only narrowly tailored excerpts under seal and filing a public version with appropriate redactions.

7. Tourprodenter's Materials may be disclosed only to:

   a. Counsel of record in this proceeding and their employees or staff;

   b. Counsel involved in the AFA Case;

   c. The parties to the AFA Case;

   d. Experts or consultants retained for purposes of the AFA Case; and

   e. The court or tribunal presiding over the AFA Case.

2

EXHIBIT 1 TO MOTION TO INTERVENE

8. Absent further order of this Court, Tourprodenter's Materials produced pursuant to subpoenas issued in this proceeding shall not be disclosed, disseminated, or otherwise provided to any person not directly involved in the AFA Case.

9. Tourprodenter's Materials shall not be uploaded, submitted, entered, or otherwise provided, whether in whole or in part, to any open generative artificial intelligence tool, large language model, or similar system for any purpose. Any such use shall be deemed a disclosure to a third party and a violation of this Order. For avoidance of doubt, this restriction does not prohibit use of closed AI tools that are operated in a manner that does not disclose Tourprodenter's Materials to any unauthorized person or entity and that do not use such materials for training or to improve models available to third parties.

10. To the extent Tofoni has disclosed Tourprodenter's Materials obtained pursuant to subpoenas issued in this proceeding to persons not authorized under this Order, Tofoni shall cease any further dissemination of such materials outside the AFA Case and shall, within fourteen (14) days of entry of this Order:

   a. Provide written notice to each person or entity to whom such materials were disclosed that the materials are subject to this Order and request that such materials be returned or destroyed;

   b. Take reasonable steps to retrieve or secure the return or destruction of such materials from persons not authorized to receive them under this Order;

   c. Identify to the Court the categories of recipients to whom such materials were disclosed, excluding privileged communications with Counsel; and

   d. File a certification with the Court describing the steps taken to comply with this provision.

EXHIBIT 1 TO MOTION TO INTERVENE

11.  Within sixty (60) days of final termination of the AFA Case, including any appeals, all of Tourprodenter's Materials, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in the AFA Case), shall either be returned to the producing entity or be destroyed. Counsel receiving such materials shall certify compliance with this requirement by affidavit. Final termination of the AFA Case shall be deemed to be the later of (1) dismissal of all claims and defenses in the AFA Case, with or without prejudice; and (2) final judgment therein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of the AFA Case, including the time limits for filing any motions or applications for extension of time pursuant to applicable law. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Tourprodenter's Materials. Any such archival copies that contain or constitute Tourprodenter's Materials remain subject to this Order.

12.  Any Party knowing or believing that any other party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

4

EXHIBIT 1 TO MOTION TO INTERVENE

13. Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable privilege.

14. The Parties and their respective Counsel agree to act in good faith when taking any action pursuant to this Order.

15. In the event that any of Tourprodenter's Materials is subpoenaed by any court, regulatory, administrative or legislative body or any person purporting to have authority to subpoena such information, the receiving entity shall not produce such information without first giving sufficient and timely written notice to the designating Party so as to enable that Party to have a reasonable opportunity to seek protective relief, provided that a Party may obey a court order preventing the Party from providing notice.

16. Neither the termination of this matter nor the termination of employment of any person who had access to any of Tourprodenter's Materials shall relieve any person or entity from the obligations of maintaining both the confidentiality and the restrictions on the use or disclosure of Tourprodenter's Materials pursuant to this Order, unless the Parties agree otherwise in writing or a court order otherwise directs.

17. This Order is without prejudice to the right of either party to seek relief from the Court, upon good cause shown from any of the provisions contained herein.

18. As a condition of receiving and retaining access to Tourprodenter's Materials, any party receiving and/or retaining such materials shall execute an Agreement to Be Bound by the terms of this Order in the form attached hereto as **Exhibit "1."**

19. The Court retains jurisdiction to interpret, modify, and enforce this Order.

5

EXHIBIT 1 TO MOTION TO INTERVENE

**SO ORDERED** this _____ day of _____, 2026.

_____
HON. CLAY D. LAND
UNITED STATES DISTRICT JUDGE

6

EXHIBIT 1 TO MOTION TO INTERVENE

**-EXHIBIT 1 to Protective Order-**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| **IN RE APPLICATION OF GUILLERMO LUIS TOFONI FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** | Case No. 4:25-cv-00313-CDL |

### CONFIDENTIALITY AGREEMENT AND AGREEMENT TO BE BOUND
### BY TERMS OF STIPULATED PROTECTIVE ORDER

Applicant Guillermo Luis Tofoni ("Tofoni" or "Applicant"), Intervenor Tourprodenter, LLC ("Tourprodenter"), and the undersigned (the "Receiving Person") hereby stipulate and agree as follows:

1.      Tofoni filed an *Ex Parte* Application of Guillermo Luis Tofoni for Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "Petition") in the above-captioned proceeding pending in the United States District Court for the Middle District of Georgia, Case No. 4:25-cv-00313-CDL (the "Action"). The Petition was filed in connection with a civil lawsuit filed by Tofoni against the Argentine Football Association ("AFA") in Argentina (Case No. CIV 084904/2023) (the "AFA Case").

2.      Pursuant to the Petition, Tofoni obtained or seeks to obtain from Synovus Bank (the "Bank") financial and banking records relating to Tourprodenter and its principals, including records identifying accounts and affiliated persons, records concerning persons authorized to operate those accounts, account-opening and related compliance materials, and records relating to transactions in those accounts (the "Subpoena Requests").

EXHIBIT 1 TO MOTION TO INTERVENE

3.      Tourprodenter has intervened in the Action to protect its confidentiality interest in the financial records and information obtained or to be obtained through the Action, and the parties have agreed to confer regarding the entry of an appropriate confidentiality or protective order.

4.      To permit the parties and authorized persons to access the financial records and information produced or to be produced in the Action without making such information public, the party seeking access agrees that the records and information produced or to be produced in connection with the Action will be subject to the terms described herein.

## DEFINITIONS

5.      **Confidential Information.** The term "Confidential Information" includes all documents, records, data, and other information concerning the financial accounts, transactions, holdings, and related records of Tourprodenter and its principals, made available, furnished, or otherwise disclosed in connection with the Action, whether produced by the Bank or by any other source in response to the Subpoena Requests, any subpoenas issued in the Action, or any order of the Court. Confidential Information shall also include any summaries, excerpts, abstracts, analyses, compilations, notes, or other materials derived from or reflecting such documents or information. Confidential Information shall exclude information which: (i) was or becomes generally available to the public other than as a result of a disclosure by any person bound by this Agreement or the Protective Order; (ii) was available to the Receiving Person on a non-confidential basis prior to its disclosure in the Action; or (iii) becomes available to the Receiving Person on a non-confidential basis from an independent source, provided that such source was not itself bound by an obligation of confidentiality and known to the Receiving Person.

2

EXHIBIT 1 TO MOTION TO INTERVENE

6.  **Protective Order.** The term "Protective Order" refers to the Stipulated Protective Order entered or to be entered in the Action governing the use, handling, and dissemination of Confidential Information.

7.  **Representatives.** The term "Representatives" means a party's attorneys, employees, agents, advisors, experts, consultants, and other representatives who need to access Confidential Information for the purpose of evaluating or addressing issues arising in the Action and who have executed a copy of this Agreement.

## OBLIGATIONS

8.  **Acknowledgment and Agreement to Be Bound.** The Receiving Person hereby acknowledges that he or she has received a copy of the Protective Order entered in the above-captioned Action. The Receiving Person has carefully read and reviewed the Protective Order in its entirety, fully understands all of its terms and conditions, and agrees to be bound by and to comply with each of its provisions as if the Receiving Person were a "Party" to the Protective Order. The Receiving Person understands that his or her obligations under this Agreement and the Protective Order are enforceable by the Court, including through contempt proceedings.

9.  **Duty of Confidentiality.** Other than as allowed by this Agreement and the Protective Order, the Receiving Person shall not disclose, copy, reproduce, distribute, give, or otherwise permit the transmittal in any manner of the Confidential Information to any person other than the parties' Representatives (as defined above). The Receiving Person shall inform any person to whom Confidential Information is disclosed pursuant to this Agreement of the confidential nature of such information and shall require such person to comply with the duty of confidentiality and the other provisions of this Agreement and the Protective Order, and to return all Confidential Information to the Receiving Person upon request.

EXHIBIT 1 TO MOTION TO INTERVENE

10.    **Purpose and Use Restrictions.** The Confidential Information shall be used only:

i.  in connection with the Action, including any proceedings, motions, or appeals arising out of or relating to the Action;

ii.  in connection with proceedings in the AFA Case, to the extent expressly authorized by the Protective Order or by further order of the Court;

iii.  as allowed by any future order of the Court, and nothing in this Agreement shall in any way limit or restrict any use or disclosure of the Confidential Information that may be otherwise permitted by any such Court order;

iv.  for such other purposes and/or disclosures as agreed to in writing by counsel for the parties; and

v.  as otherwise expressly permitted by the Protective Order.

The Receiving Person shall not use or disclose the Confidential Information for any other purpose whatsoever, including but not limited to any business, commercial, competitive, governmental, journalistic, or personal purpose or function, or in any other litigation, proceeding, investigation, criminal complaint, or matter, whether pending or contemplated, except as expressly permitted above.

11.    **Scope of Permitted Disclosures in Court Filings.** To the extent that Confidential Information is disclosed for a purpose authorized under Paragraph 10 of this Agreement, the disclosing party shall disclose only those portions of the Confidential Information that are necessary for each specific proceeding. For clarity, to the extent a party seeks to utilize Confidential Information in a court filing (sealed or unsealed), the party is authorized to disclose: (i) the relevant names of the individuals and/or entities associated with accounts from which information was obtained; (ii) the identity of the financial institution(s) from which information

EXHIBIT 1 TO MOTION TO INTERVENE

was obtained; (iii) the last four digits of account numbers; (iv) account balances; and (v) addresses associated with accounts (if necessary, for instance, in a certificate of service). To the extent a party deems it necessary to disclose additional Confidential Information in a court filing, that party will first give notice to counsel for Tourprodenter and will proceed to work with Tourprodenter's counsel to agree to terms regarding: (i) the specific additional Confidential Information to be disclosed; and (ii) the manner of such disclosure (e.g., use of redactions, filing under seal). If the parties are unable to reach agreement, either party may seek court intervention.

12.     **Safeguarding of Confidential Information.** The Receiving Person agrees to take all reasonable measures to safeguard the Confidential Information from unauthorized access, disclosure, or use. The Receiving Person shall maintain Confidential Information in a secure location and shall not leave such material unattended in any location where unauthorized persons could gain access to it. The Receiving Person shall not transmit or store Confidential Information on any unsecured electronic device, platform, or medium except as necessary and consistent with this Agreement and the Protective Order.

13.     **Compelled Disclosure.** In the event that the Receiving Person becomes legally compelled to disclose any Confidential Information, whether by subpoena, court order, regulatory demand, or otherwise, the Receiving Person shall provide Tourprodenter prompt prior written notice of such requirement (unless such notice is prohibited under applicable law), so that Tourprodenter may determine whether to seek a protective order or other means of preventing the disclosure. Prior notice shall be provided to Tourprodenter no less than fourteen (14) days prior to any disclosure, dissemination, or transmittal (unless such notice is prohibited under applicable law). In the event that such protective order or other remedy is not obtained, or the Receiving Person is otherwise legally compelled, the Receiving Person agrees to furnish only that portion of

5

EXHIBIT 1 TO MOTION TO INTERVENE

the Confidential Information which is legally required and to exercise reasonable efforts to obtain assurances that confidential treatment will be accorded to such Confidential Information.

14.     **Return or Destruction of Confidential Information.** Within sixty (60) days of the conclusion of the Action (including any and all appeals therefrom), or within sixty (60) days of the termination of the Receiving Person's involvement in the Action, whichever occurs first, the Receiving Person will either destroy or return to counsel for the party by whom the Receiving Person is employed or retained all Confidential Information (including all copies, summaries, excerpts, abstracts, notes, and any other materials derived from Confidential Information) that has come into the Receiving Person's possession, custody, or control. Upon request, the Receiving Person agrees to certify in writing that he or she has complied with this obligation.

15.     **Consent to Jurisdiction.** The Receiving Person hereby consents to the personal jurisdiction of the United States District Court for the District of Delaware with respect to any proceedings relative to or arising from the enforcement of the Protective Order or this Agreement, including without limitation any proceeding related to contempt of court, any motion to compel compliance, and any other proceeding seeking relief for alleged violations of the Protective Order or this Agreement. The Receiving Person agrees that such consent shall be irrevocable for the duration of the Action and for so long as any obligation under the Protective Order or this Agreement remains in effect.

16.     **Survival.** The Receiving Person's duty of confidentiality and all other obligations described herein will survive the resolution by settlement or final judgment of the Action and any proceedings incident thereto, and the termination of any appeals therefrom.

17.     **Government Disclosures.** Notwithstanding anything herein to the contrary, a party shall be permitted to discuss with and/or disclose Confidential Information to any government

6

EXHIBIT 1 TO MOTION TO INTERVENE

body, including without limitation the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), for any purpose authorized under Paragraph 10 of this Agreement or otherwise required by law.

18.    **No Waiver of Rights or Privileges.** Nothing in this Agreement shall constitute a waiver or adjudication of any objection that any party or non-party may have to the Petition, the subpoenas issued in the Action, or any other process, nor shall it constitute a waiver of any right, privilege, defense, or immunity that any party or non-party may have with respect to any Confidential Information, including but not limited to any claim of attorney-client privilege, work-product protection, or any other applicable privilege or protection. Disclosure of Confidential Information pursuant to this Agreement shall not constitute a determination by any party or non-party with respect to any legal right(s) that any party may have in any proceedings incident to the Action.

19.    **Reservation of Rights.** Tourprodenter reserves the right to seek a further protective order or other relief from the Court to limit the use or dissemination of Confidential Information beyond the protections afforded by the Protective Order and this Agreement.

I, the Receiving Person, declare under penalty of perjury that I have read and understand this Agreement in its entirety and agree to be bound by all of its terms, conditions, and obligations, and by all terms of the Protective Order, as if I were a "Party" thereto. I agree, under penalty of contempt, to comply with each of the foregoing provisions.

Executed this ___ day of _____, 2026.
By:                          _____
Printed Name:                _____
Title:                       _____
Company/Organization:        _____
Address:                     _____
Telephone:                   _____
Email:                       _____

7

EXHIBIT 1 TO MOTION TO INTERVENE