**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA**

| | |
|---|---|
| **IN RE PETITION OF GUILLERMO LUIS TOFONI FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** | Case No. 4:25-CV-313 |

**<u>TOURPRODENTER, LLC'S MOTION FOR A PROTECTIVE ORDER
AND BRIEF IN SUPPORT</u>**

Tourprodenter, LLC ("Tourprodenter"), by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 26(c)(1) for entry of the protective order attached as **Exhibit "1,"** to govern the use and dissemination of Tourprodenter's materials obtained through this proceeding, and to impose reasonable remedial measures to address prior dissemination beyond what this Court initially authorized. In support, of this Motion for Protective Order, Tourprodenter states as follows:

**<u>INTRODUCTION</u>**

Applicant Guillermo Tofoni ("Tofoni") sought discovery in this proceeding that includes highly sensitive financial information concerning Tourprodenter. In his Petition, Tofoni represented that he sought this Court's assistance to obtain discovery for use in a breach of contract proceeding against the Argentine Football Association ("AFA") pending in Argentina (the "AFA Case"). This Court granted that request *ex parte* based on the representations contained in the Petition and authorized discovery for the limited purposes described therein.

However, Tofoni's conduct in this proceeding and in a parallel proceeding in the United States District Court for the District of Delaware demonstrates that information obtained through §1782 discovery has been used for purposes unrelated to the AFA Case. Specifically, Tofoni

obtained Tourprodenter's banking records through subpoenas issued to several financial institutions, and rather than limiting the use of that discovery to the AFA Case, he used that information to advance a separate criminal complaint in Argentina against Tourprodenter's principals and to disseminate Tourprodenter's banking information to multiple Argentine media outlets.

Because the discovery in this matter was authorized by this Court for the limited purposes described in the Petition, the use of such materials outside the AFA Case undermines the limitations under which the Court's authority was invoked. Additionally, since Tofoni's conduct demonstrates that information provided by Synovus Bank has already been misused, there is a substantial risk that the same misuse will continue to occur absent appropriate safeguards.

Accordingly, Tourprodenter seeks a protective order limiting the use of any information obtained through this §1782 proceeding solely to the AFA Case, prohibiting disclosure to the media or other third parties; requiring reasonable remedial measures to address prior dissemination; and ordering the return or destruction of all documents and information not used in the AFA Case.

## BACKGROUND

### A.   Tofoni's §1782 Petition in Georgia.

1.      Tofoni alleges that on Mar 4, 2021, he signed a contract with AFA that gave him the exclusive rights to organize friendly soccer matches for the Argentine men's national team from November 1, 2022 to December 31, 2030, along with 30% of each match's profits. *See* (ECF No. 1-3) at 2-3. Tofoni further claims that AFA breached this contract by organizing friendly soccer matches through other agents or otherwise without his involvement. *Id.* at 3.

2

2.      In connection with this alleged breach of contract, in November 2023, Tofoni filed a lawsuit against AFA—the AFA Case—in a civil Argentinian court.[1]  *Id.* at 2. In this proceeding, Tofoni alleges that Tourprodenter acted as AFA's collection agent for AFA's organization of a friendly soccer match in Beijing, China, in which AFA allegedly contracted with two Chinese companies in breach of Tofoni's contract with AFA. *Id.* at 3.

3.      On October 6, 2025, Tofoni filed in this case his *Ex Parte* Petition for Judicial Assistance in Obtaining Evidence for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782. *See* (ECF No. 1) (the "Petition"). Tofoni represented to this Court that he needed to subpoena Synovus Bank, or in the alternative, First Commercial Bank, a division of Synovus Bank, to obtain evidence for use in the AFA Case, including Tourprodenter's financial information. *Id.* at 4-7.

4.      In particular, Tofoni's contemplated subpoena contained four sweeping document requests directed at obtaining Tourprodenter's financial information. First, he demanded documents sufficient to identify every account of any type held by Tourprodenter and its "affiliated persons," effectively seeking a comprehensive map of banking relationships. *See* (ECF No. 1-10) at 6, ¶ 1. Second, he sought "all documents," without limitation, concerning any individuals authorized to operate any such accounts. *Id.* at 6, ¶ 2. Third, he demanded "all documents" relating to the opening of every account, including account-opening forms, correspondence, KYC and due diligence files, emails, and internal notes—requests that would have required the production of entire onboarding and compliance files across multiple accounts. *Id.* at 6, ¶ 3. Fourth, he sought "all documents" relating to any transactions in any such accounts, including every wire or transaction referencing a list of third parties, and required production sufficient to identify transaction amounts and origin and destination accounts—an open-ended request that would have

---

[1]      The AFA Case is registered in the Argentinian Civil Court under number CIV 084904/2023.

swept in complete transaction histories and supporting documentation across multiple entities and time periods. *Id.*, at 6, ¶ 4.

5. Tofoni supported his Application with the sworn declaration of Argentine attorney Francisco Castex, of the law firm Castex Pauls Abogados, *see* (ECF No. 1-4) (the "Castex Decl."), and Georgia attorney Scott R. Grubman, *see* (ECF No. 1-6) (the "Grubman Decl."). The Castex Declaration also states that the information to be obtained from the banks is for use in the AFA Case. *See* Castex Decl., ¶¶ 5, 18-26.

6. On October 7, 2025, the Court granted Tofoni's Petition. Additionally, the Court appointed Scott Grubman as "Commissioner of the Court with the power to issue a subpoena to Synovus Bank for the limited purposes described in the Petition." *See* (ECF No. 3) at ¶ 2.

**B. Parallel §1782 Petition in Delaware.**

7. At the same time, Tofoni filed a parallel § 1782 petition in the United States District Court for the District of Delaware, *In Re Petition of Guillermo Luis Tofoni for Judicial Assistance Pursuant to 28 U.S.C. § 1782*, Case No. 1:25-cv-01217, where he purportedly intended his Petition to obtain evidence for use in the same AFA Case ("Delaware §1782"). *See* Petition attached as **Exhibit "2."**

8. On October 10, 2025, the Delaware District Court issued an Order granting Tofoni's petition. Tofoni issued his initial subpoenas to Citigroup, Inc., Bank of America Corp., and JPMorgan Chase & Co. *See* October 10, 2025 Court Order attached as **Exhibit "3."**

9. On January 20, 2026, Tofoni moved *ex parte* to reopen the case and for authorization to issue additional subpoenas to several banks, once again for alleged use in the AFA Case. *See* Motion attached as **Exhibit "4."**

10.    On January 21, 2026, the Court granted Tofoni's request to issue additional subpoenas to PNC Bank, N.A., First Citizens Bank & Trust Co., Wells Fargo Bank, N.A., The Bank of New York Mellon, and City National Bank. *See* January 21, 2026 Court Order attached as **Exhibit "5."**

**C.    Use of §1782 Discovery Outside the Authorized Foreign Proceeding**

11.    To date, Tofoni has not filed the information obtained from Synovus Bank and the other financial institutions in the AFA Case. *See* Declaration of Maximiliano Rusconi ¶ 9, attached as **Exhibit "6"** (the "Rusconi Decl."). Rather, he has used the information for matters unrelated to that foreign proceeding.

12.    For example, on or about December 30, 2025, Tofoni filed a new criminal case, Case No. 66191/2025, against Tourprodenter's principals, Ms. Erica Gabriela Gillette and Mr. Javier Faroni. In that criminal complaint, Tofoni included banking and financial information attributed to Tourprodenter, including references to bank accounts and transfers of funds across various financial institutions in the United States. Specifically, Tofoni referred to Tourprodenter's bank accounts at Synovus Bank. *See* Rusconi's Decl. at ¶ 5.

13.    On February 19, 2026, Tofoni submitted a filing before the Argentine courts in which he stated that the financial information referenced in his complaint was obtained through a "discovery" proceeding he initiated before federal courts in the United States. In that same submission, Tofoni further asserted that "U.S. judicial authorities" had determined that his claims were "legally cognizable," which, according to him, constitutes a prior recognition of his standing and of the existence of a potential direct pecuniary harm. *Id.* at ¶ 6.

14.    On March 3, 2026, Tofoni filed a motion seeking leave to amend his criminal complaint. Specifically, Tofoni sought to submit bank records obtained from PNC Bank through

the Delaware §1782, including unredacted account opening documents, Tourprodenter's signature card, and bank statements. *Id.* at ¶ 7.

15.     As of March 11, 2026, Tofoni has not filed any financial records of Tourprodenter, nor any other documents that he has identified as having been obtained through this proceeding or through the Delaware §1782. *See* Rusconi's Declaration at ¶ 9.

16.     Additionally, on February 22, 2026, the Argentine media outlet La Nación published an article accusing Tourprodenter of engaging in suspicious transactions on behalf of AFA.[2] The article reported that "Justice in the United States" had ordered Tourprodenter's banks to disclose its financial information—suggesting the existence of a criminal investigation in the United States involving Tourprodenter—and stated that the information had been obtained from materials produced in this § 1782 proceeding. *See* Certified Translation of February 22, 2026 La Nacion Article attached as **Exhibit "7."**

17.     Similarly, on February 27, 2026, the Argentine media outlet "Infobae.com" published an article publicly disseminating Tourprodenter's bank information and noting that the information had been obtained from Tofoni.[3] *See* Certified Translation of February 27, 2026 La Nacion Article attached as **Exhibit "8."** On the same day, La Nación published a similar article,

---

[2]     *See* La Nación, Aparecen Transferencias a Otras Dos Empresas Fantasma y Los Desvíos ya Superan los US$50 Millones, https://www.lanacion.com.ar/politica/aparecen-transferencias-a-otras-dos-empresas-fantasma-y-los-desvios-ya-superan-los-us50-millones-nid21022026/ (Last visited March 16, 2026).

[3]     Infobae.com, Exclusivo: Hallaron Otro Banco en EEUU Que Manejó Fondos de La AFA y Giró USD 3 Millones a Empresas Fantasma, https://www.infobae.com/politica/2026/02/27/exclusivo-hallaron-otro-banco-en-eeuu-que-manejo-fondos-de-la-afa-y-giro-usd-3-millones-a-empresas-fantasma/ (last visited, March. 16, 2026).

noting that Tourprodenter's banking information had been obtained from Tofoni's § 1782 proceedings in the United States.[4]

18.     On March 11, 2026, undersigned counsel emailed counsel for Tofoni advising that Tourprodenter intends to intervene in this matter based on Tofoni's misuse of information obtained through these proceedings, and requesting a conferral regarding Tourprodenter's anticipated motions to intervene and for a protective order. That same day, however, Tofoni appeared in a YouTube-broadcast media interview[5] in which he publicly discussed and boasted about information obtained through the Section 1782 proceedings. The parties subsequently held a Zoom conferral on March 16, 2026, at 2:00 p.m.

## MEMORANDUM OF LAW

## I.     GOOD CAUSE EXISTS FOR ENTRY OF A PROTECTIVE ORDER

### A.     Legal Standard.

Federal Rule of Civil Procedure 26(c)(1) authorizes the Court to issue protective order to protect a person from annoyance and embarrassment. *See* Fed. R. Civ. Pro 26 (c)(1). "A court may enter a protective order on a party's motion "for good cause shown."" *Smith v. GEO Grp., Inc*., Case No. 5:16-CV-186, 2019 U.S. Dist. LEXIS 99437, *3, 2019 WL 2471824 (M.D. Ga. June 13, 2019). "The good cause standard "requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential."" *Wooten v. LaSalle Se. LLC*, 2025 U.S. Dist. LEXIS 179825, *4, 2025 LX 348845,

---

[4]     La Nación, Está Registrada en El PNC Bank y Pertenece a La Empresa Tourprodenter; Los Desvíos a Sociedades En Miami Sin Actividad Rozan Los US$55 Millones, https://www.lanacion.com.ar/politica/afagate-aparecio-otra-cuenta-de-javier-faroni-en-eeuu-que-desvio-mas-de-us3-millones-a-cinco-nid27022026/ (last visited, March 16, 2026).

[5]     Guillermo Tofoni aseguró que la AFA no ingresó 400 millones de dólares de amistosos de la Selección, https://www.youtube.com/watch?v=BOpSMRbRyvg (last visited March 16, 2026).

2025 WL 2648242 (M.D. Ga. Sept. 15, 2025) (citing *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001)). "Indeed, "the most critical Rule 26(c) factor" is "balancing the potential harm to the [party seeking the protective order] against the interests of the other parties in the case."" *Id*. (citing *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251 (11th Cir. 2020)). "Courts have found that the existence of a protective order "minimize[s] any harm that might otherwise result from compelling disclosure of bank examination information."" *In re Wilmington Trust Sec. Litig.,* 2016 U.S. Dist. LEXIS 189794, *36 (D. Del. Aug. 16, 2016) (quoting *In re Subpoena Served Upon Comptroller of Currency ("Fleet")*, 967 F.2d 630, 633, 296 U.S. App. D.C. 263 (D.C. Cir. 1992)). Courts have held in other districts that "[w]here the requesting party establishes a substantial need, courts will look to whether procedures exist to mitigate any burden or prejudice to the nonparty. *See* Rule 45(c)(3)(C) (providing that the Court may order production "only upon specified conditions"). In particular, courts often order that the information be produced subject to a protective order." *Sci. Games Corp. v. AGS LLC*, Case No. 2:17-cv-00343, 2017 U.S. Dist. LEXIS 109488, *7, 2017 WL 3013251 (D. Nev. Jul. 13, 2017).

In addition, "Rule 26(c)(1), "gives the district court discretionary power to fashion a protective order. "" *Gaddy v. Terex Corp*., 2016 U.S. Dist. LEXIS 31087, *5, 2016 WL 1047011 (N.D. Ga. Mar. 10, 2016) (citing *Farnsworth v. Procter & Gamble Co*., 758 F.2d 1545 (11th Cir. 1985.)) "Moreover, "the permissive language of section 1782 vests district courts with discretion to grant, limit, or deny discovery."" *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191, 1999 U.S. App. LEXIS 6970, *6, (3d Cir. 1999) (citing *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997.)) Courts exercising jurisdiction under §1782 routinely rely on this authority to tailor discovery obtained through judicial assistance. *See Sanchez v. Adverit Int'l LLC,* 2025 U.S. Dist. LEXIS 147075, *20, 2025 LX 361233, 2025 WL 2171607 (S.D. Fla. Jul. 31, 2025) (quoting *In re*

8

*Accent Delight Int'l Ltd.*, 869 F.3d 121, 133 (2d Cir. 2017)) ("[E]ven if [§ 1782's] statutory requirements are met, a grant of discovery under [§] 1782 remains within the discretion of the district court."); *see* also *Esses v. Hanania (In re Esses)*, 101 F.3d 873, 876, 1996 U.S. App. LEXIS 31156, *8 (2nd Circ. 1996) ("Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems."); *In re Merck & Co.,* 197 F.R.D. 267, 270, 2000 U.S. Dist. LEXIS 17497, *7 (M.D.N.C. 2000) (same); *see* also *In re Malev Hungarian Airlines*, 964 F.2d 97, 99 (2d Cir. 1992) (noting that a district court has broad authority under section 1782 and Fed. R. Civ. P. 26 to impose reasonable limitations and conditions upon discovery). Where there is a concern that materials obtained through § 1782 discovery may be disseminated beyond the scope of their authorized use, courts may impose reasonable measures to ensure that such materials remain subject to the limitations under which the Court granted the application. *Id.* ("If a district court is concerned that granting discovery under § 1782 will engender problems in a particular case, it is well-equipped to determine the scope and duration of that discovery.")

### B.    Good Cause Exist Because The §1782 Discovery Has Been Used Outside the Authorized Purpose.

Tourprodenter's confidential financial information obtained through subpoenas in connection with both this proceeding and the Delaware §1782, including the information obtained from the Synovus Bank, has already been used for purposes unrelated to the AFA Case. This conduct demonstrates a concrete and ongoing risk that sensitive financial information obtained through Tofoni's §1782 Petition could again be misused and publicly disseminated unless appropriate safeguards are ordered by the Court. *See The Icon at Panorama, LLC v. Southwest Reg'l Council of Carpenters*, Case No. 2:19-cv-00181, 2020 U.S. Dist. LEXIS 16200, *7, 2020 LX 11008 (C. D. Cal. Jan. 31, 2020) (Disclosure of sensitive, confidential and proprietary business

9

and financial information in civil discovery should be done only under properly fashioned protective orders.)

The public dissemination of Tourprodenter's information is particularly troubling because the materials at issue consist of banking records, which courts routinely recognize as deserving heightened protection from disclosure. *See Richards v. Superior Court,* 86 Cal. App. 3d 265, 150 Cal. Rptr. 77 (1978) (restricting disclosure of financial statements only to counsel and only for the purpose of the instant lawsuit); *see* also *Eagle Air Med Corp. v. Sentinel Air Med. All*., 2018 U.S. Dist. LEXIS 95723, *3 (D. Nev. June 6, 2018) ("Protective orders […]  are "the primary means by which the courts ensure full disclosure of relevant information, while still preserving the parties' (and third parties') legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly disseminated."")

### C.     Tourprodenter Has Significant Privacy Interest in the Financial Information Sought by Tofoni.

"[A] party's interest in the confidentiality of financial information may be adequately addressed via a protective order." *RePet, Inc. v. Zhao*, 2016 U.S. Dist. LEXIS 197359, *16, 2016 LX 83944, 2016 WL 11634744 (C.D. Cal. Nov. 3, 2016). The subpoena served on Synovus Bank, among other things, allowed Tofoni to obtain records relating to Tourprodenter's savings, checking, or investment accounts, documents concerning the persons authorized to operate those accounts, due diligence materials, and wire transfer records. *See* (ECF No. 1-10), Exhibit 4 at 6. Courts have recognized that financial records implicate significant privacy interests because "public disclosure of financial information may be personally embarrassing and highly intrusive." *See Fraternal Order of Police, Lodge No. 5 v. City of Phila*., 812 F.2d 105, 115 (3d Cir. 1987) (quoting *Barry v. City of New York*, 712 F.2d 1554, 1561 (2d Cir. 1983)); *see also Cent. States Publ'g, Inc. v. FBI*, No. 83-2694, 1985 U.S. Dist. LEXIS 13556, at *6 (E.D. Pa. Nov. 25, 1985)

(noting that the proposition that a privacy interest is legally protected cannot be seriously contested).

Here, the bank records obtained from Synovus Bank reveal sensitive details regarding Tourprodenter's financial affairs, including the movement of funds through its accounts as well as the nature of its financial dealings with third parties. The public dissemination of such materials, particularly without context, can easily create misleading impressions regarding otherwise routine business transactions. In fact, the risk of embarrassment is not speculative. Banking information attributed to Tourprodenter has already appeared in Argentine media outlets suggesting wrongdoing by Tourprodenter and its principals. The same information has also been used in connection with the new criminal complaint filed by Mr. Tafoni against Tourprodenter's principals, as well as other defendants. *See* Rusconi's Declaration at ¶ 5. The publication of such information in the media demonstrates how financial records can be used to create public suspicion or controversy even where no wrongdoing exists.

Under these circumstances, Tourprodenter's significant privacy interest in its financial records, together with the demonstrated risk that such records may again be publicly disseminated, Tourprodenter moves this court for the entry of a protective order limiting the use and disclosure of any financial materials produced in this proceeding. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994) (privacy concerns are assuaged "if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know.")

### D.     A Protective Order Is Necessary to Prevent Further Misuse of Financial Information.

Courts regularly use protective orders to mitigate the risks associated with the disclosure of sensitive financial information obtained through subpoenas directed to financial institutions.

Protective measures help minimize the harm that might otherwise result from the disclosure of confidential banking information. *In re Wilmington Trust Sec. Litig.,* 2016 U.S. Dist. LEXIS 189794, *36. By imposing reasonable restrictions on the use and dissemination of discovery materials, courts ensure that sensitive information obtained through judicial process remains confined for the purposes for which it was sought and does not become the subject of public dissemination or collateral disputes.

To balance Petitioner's asserted need for discovery with Tourprodenter's legitimate privacy and confidentiality interests, the Court should enter a protective order governing the use and dissemination of any materials produced in this proceeding. Specifically, Tourprodenter respectfully requests that the Court enters the order attached as **Exhibit "1"** ensuring that: (i) any information produced pursuant to subpoenas issued in this proceeding be used solely for purposes of the AFA; (ii) such materials shall not be disclosed to members of the media or to any third party not involved in the AFA; (iii) Petitioner undertake reasonable efforts to retrieve or secure the return or destruction of materials that have already been disseminated outside the authorized scope of use; and (iv) all banking information produced pursuant to this proceeding shall be returned to the producing party or destroyed if not used in the AFA. *See Cunningham v. Jordan*, 2024 U.S. Dist. LEXIS 42737, *5, (N.D. Ga. Feb. 20, 2024) (court ordered Plaintiff to immediately and permanently delete and destroy any and all private banking information that he has or will acquire by serving subpoenas on non-parties in this case.); *Wicker v. Prabhu Paramatma*, 2020 U.S. Dist. LEXIS 266127, *9, 2020 WL 13539106 (N.D. Ga. Mar. 16, 2020) (directing the parties to meet and confer, and propose to the Court a consent protective order limiting disclosure of bank account records.)

These safeguards would ensure that financial information obtained through this Court's process is not again publicly disseminated or used for purposes unrelated to the AFA Case, for which it was purportedly sought.

### CONCLUSION

Based on the foregoing points and authorities, Tourprodenter respectfully requests that the Court enter an Order: (i) granting Tourprodenter's Motion; (ii) issuing the Protective Order attached as **Exhibit "1"**; and (iii) grant any and all further relief the Court deems just and proper.

DATED: March 25, 2026          Respectfully submitted,

**Clark Hill PLC**
3630 Peachtree Road N.E., Suite 700
Atlanta, GA 30326
Telephone: (470) 845-0207

By: */s/ Lewis. P. Perling*
Lewis P. Perling (Georgia Bar No. 572379)
Attorney Email: lperling@clarkhill.com

**DIAZ INTERNATIONAL LAW FIRM**
100 Southeast Second Street, Suite 3400
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

By: */s/ Javier Coronado Diaz*
Javier Coronado Diaz (Fla. Bar No. 1047848)
Attorney Email: jcoronado@diazreus.com
(Admitted *pro hac vice*)
Michael Diaz, Jr. (Fla. Bar No. 606774)
Attorney Email: mdiaz@diazreus.com
(Motion for *pro hac vice* admission forthcoming)
Gabor Gazso von Klingspor (Fla. Bar No. 1058977)
Attorney Email: ggazso@diazreus.com
(Motion for *pro hac vice* admission forthcoming)
John Q. Foster (Fla. Bar No. 1059167)
Attorney Email: jfoster@diazreus.com
(Motion for *pro hac vice* admission forthcoming)

*Counsel for Tourprodenter, LLC*

13

**CERTIFICATE OF CONFERRAL**

The undersigned hereby certifies that on March 11 and 16, Tourprodenter's counsel and counsel for Tofoni conferred regarding the relief sought herein through email and Zoom videoconference.

/s/ Lewis. P. Perling
Lewis. P. Perling


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed on March 25, 2026 with the Court's CM/ECF system, which will serve a true and correct copy thereof on all counsel of record.

/s/ Lewis. P. Perling
Lewis. P. Perling

14