**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| |
|---|
| **IN RE APPLICATION OF GUILLERMO LUIS TOFONI FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

CA. No. <u>1:25-cv-01217</u>-UNA

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S EX PARTE**
**APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

Petitioner Guillermo Luis Tofoni hereby petitions for an order of judicial assistance, pursuant to 28 U.S.C. § 1782, appointing Melissa Donimirski, Esq. as a Commissioner of the Court to facilitate subpoenas for the gathering of documentary evidence from Bank of America Corporation, Bank of America N.A., Citigroup, Inc., and JP Morgan Chase Inc., all of which "reside in" and are "found in" the District of Delaware. Petitioner seeks limited, but critical, discovery for use in a pending legal proceeding in the first instance court for commercial matters in Argentina (*Juzgado Nacional de Primera Instancia en lo Comercial Número 8*) captioned *Tofoni, Guillermo Luis c/ Asociación de Futbol Argentino A.F.A. s/ Cumplimiento de Contrato (expediente CIV 084904/2023),* in which he is the plaintiff.

**FACTUAL BACKGROUND**

**A. The Argentine Proceeding**

Petitioner Guillermo Tofoni is the only Match Agent in Argentina licensed by the International Federation of Association Football (*Fédération Internationale de Football Association* or "FIFA"). Declaration of Francisco Castex ("Castex Decl.") ¶ 8. Match Agents are individuals who are registered with FIFA to organize matches between National Teams. *Id.* Mr. Tofoni first obtained his license in 1999 and he has organized hundreds of matches ever since. *Id.* Over the years, Mr. Tofoni entered into several contracts with the Argentine Football Association

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

(*Asociación del Fútbol Argentino* or "AFA") to organize friendly matches. *Id.* ¶ 9. AFA is the governing body of soccer in Argentina, and it manages the Argentine national soccer teams, as well as other soccer teams and leagues. *Id.* ¶ 7. The most recent of the contracts between Mr. Tofoni and AFA, executed on May 4, 2021 (the "2021 Contract") gave Mr. Tofoni the exclusive rights to organize "friendly," or non-competitive, matches for the Argentine men's national team from November 1, 2022 until December 31, 2030. In exchange for Mr. Tofoni's work to organize these matches, and the costs that he would incur, Mr. Tofoni was to receive 30% of match profits. *Id.* ¶ 9.

In November 2023, Mr. Tofoni initiated litigation against AFA in the Argentine first instance court that hears commercial matters, called the *Juzgado Nacional de Primera Instancia en lo Comercial Número 8*. The case is captioned *Tofoni, Guillermo Luis c/ Asociación de Futbol Argentino A.F.A. s/ Cumplimiento de Contrato (expediente CIV 084904/2023)* (the "Argentine Proceeding"). *Id.* ¶ 5. In the Argentine Proceeding, Mr. Tofoni alleges that AFA breached the 2021 Contract by ignoring its contractual obligations to him and instead organizing friendly matches through other agents or otherwise without his involvement. *Id.* ¶ 6. He seeks enforcement of the 2021 Contract, as well as damages resulting from the lost opportunity to organize the matches and to receive his percentage of the profits. *Id.*

**B.     AFA's Breaches of the 2021 Contract**

A month after the 2021 Contract went into effect, in December 2022, the Argentine men's national team won the World Cup tournament in Qatar. *Id.* ¶ 10. In addition, Lionel Messi, Argentina's star player and a worldwide sensation, decided to continue playing with the team. *Id.* These developments made the team much more profitable than it had previously been, and AFA's breach of the 2021 Contract followed shortly thereafter. *Id.*

<center>2</center>

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

In January 2023, Mr. Tofoni learned that AFA had hired Prosport Live LLC, a Florida company, to organize two friendly matches for the Argentine national team. *Id.* ¶ 11. This was a breach of AFA's contract with Mr. Tofoni, who was to have the exclusive rights to organize friendly matches at that time. *Id.* Mr. Tofoni confronted AFA about this contractual breach. *Id.* AFA's response was to deny the existence of the 2021 Contract. *Id.* From that point onward, AFA organized friendly matches, either independently or through third parties, but without the involvement of Mr. Tofoni. *Id.* Mr. Tofoni is entitled to 30% of all friendly match profits, but he did not receive any compensation for these matches due to AFA's contractual breaches. *Id.*

These friendly matches organized in breach of the 2021 Contract resulted in the payment of millions of dollars to AFA. *Id.* ¶ 12. The complaint in the Argentine Proceeding alleges, for example, that AFA contracted with China Rainbow International Investment Co. and Shaanxi Provincial Sports Industry Group Co., Ltd., two Chinese companies, on May 12, 2023, for the organization of a friendly match in Beijing, China. The contract provided for the payment of US$ 7 million to Tourprodenter LLC, a Florida company ("Tourprodenter"), through its account at Synovus Bank (or, alternatively, First Commercial Bank, a division of Synovus Bank), a Georgia state-chartered bank. The contract designates Tourprodenter as AFA's "collection agent." *Id.* ¶ 12.

**C.      Legal Claim for Which Evidence is Sought**

On November 3, 2023, Mr. Tofoni initiated the Argentine Proceeding by filing a complaint. In the complaint, Mr. Tofoni asserts a breach of contract claim against AFA and seeks AFA's compliance with the 2021 Contract and damages for AFA's breaches. *Id.* ¶ 13. Mr. Tofoni alleges that the 2021 Contract is a valid, fully executed contract that complies with all requirements of the Argentine Civil and Commercial Code. He further alleges that it was signed by Mr. Tofoni, as well as Claudio Tapa, the president of AFA, and Pablo Toviggino, the secretary general of AFA.

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

*Id.* In the 2021 Contract, both Mr. Tapa and Mr. Toviggino confirm their authority to bind AFA, and the contract specifically indicates that no additional approvals are required. *Id.*

AFA responded to the complaint on August 2, 2024, by requesting the dismissal of Mr. Tofoni's claims on the basis that the 2021 Contract is invalid. *Id.* ¶ 14. AFA asserts that the 2021 Contract was not signed by Mr. Tapia or Mr. Toviggino, and that neither Mr. Tapia nor Mr. Toviggino had the authority to bind AFA. *Id.* AFA further asserts that approval of the contract by AFA's Executive Committee was required, but not obtained. *Id.*

**D.     Procedural Posture of the Argentine Proceeding**

The Argentine Proceeding was initiated with the filing by Mr. Tofoni of the complaint on November 3, 2023. AFA responded to the complaint on August 2, 2024. *Id.* ¶ 15. At a preliminary hearing on July 5, 2025, Mr. Tofoni requested that the court bifurcate the evidentiary stage of the proceeding, first addressing the existence and validity of the contract, and then subsequently addressing the evidence to prove damages. *Id.* ¶ 16. AFA opposed the request. *Id.* The court took the matter under advisement, and the parties are awaiting a decision as to how the case will proceed. *Id.*

Regardless of the outcome, Mr. Tofoni will now have to obtain and develop the evidence in support of his claim for trial. This process will involve requesting evidence from third parties, seeking AFA's and others' recognition of relevant documents, and developing witness declarations and expert reports. *Id.* ¶ 17.

**E.     The Need for this Application**

Mr. Tofoni seeks information regarding payments made to AFA, or to third parties on behalf of AFA, in relation to friendly matches that were organized in breach of the 2021 Contract. Mr. Tofoni has certain limited information regarding specific transactions, such as the transaction

<div align="center">4</div>

<div align="right" style="color:red">EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER</div>

described above and others described below, and he believes that additional transactions will likely be revealed through discovery. *Id.* ¶ 18.

The evidence that Mr. Tofoni seeks is necessary for two purposes. First, the evidence is necessary for calculating Mr. Tofoni's lost opportunity damages resulting from AFA's breaches. To estimate these damages, Mr. Tofoni requires information on the profit those matches have made in the past. *Id.* ¶ 23. This information would also assist in calculating how much the friendly matches may generate in the future. Without the requested discovery, he does not have the necessary information to make these calculations. *Id.* This is particularly the case because, as noted above, the Argentine men's national team's matches have become more profitable since the team won the World Cup in 2022 and Messi decided to continue playing. This increase in profitability coincides with the period when AFA began organizing matches in breach of its contract with Mr. Tofoni. *Id.* Information about payments to AFA by third parties in connection with these friendly matches will provide useful data points to calculate Mr. Tofoni's damages. For instance, one method of calculation would be to add together the profits for the matches organized during the contract period, deduct estimated historical costs, and then calculate the 30% to which Mr. Tofoni was entitled from this final amount. *Id.* ¶ 24. In addition, Mr. Tofoni will need this evidence post-judgment to enforce an award against AFA. *Id.* ¶ 25. As explained above, millions of dollars in AFA profits from these friendly matches were funneled through various third parties. The evidence about the transactions as well as the identity and nature of the various third parties will assist Mr. Tofoni to trace these funds so that he may execute a potential judgment against those assets. *Id.*

Because respondents are located in the United States, they are outside the jurisdictional reach of the Argentine court.

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

**F.      The Relevant Transactions**

Mr. Tofoni has certain limited information about transactions undertaken in breach of the 2021 Contract.  He seeks additional information and evidence about these transactions, as well as other similar transactions involving the same companies.   The timeframe for the requests is from November 1, 2022, the date that the 2021 Contract took effect, until the present.

One transaction, addressed above, involved a US$ 7 million payment for a friendly match in Beijing, China, made by two Chinese companies to a Synovus Bank (or First Commercial Bank) account owned by Tourprodenter, which acted as "collection agent" for AFA.  According to a March 1, 2024 contract between AFA and 4E International Ltd ("4E International"), a Malaysian company, regarding sponsorship of the Argentine men's national soccer team through friendly and other matches, AFA again designated Tourprodenter as "collecting agent" to receive US$ 2.88 million through a Citibank, N.A. account.  *Id. ¶* 20.  That same contract also designated another company, Global FC LLC ("Global FC"), as "collecting agent" for AFA.  Global was to receive US$ 1.62 million paid into an account at JP Morgan Chase Bank, N.A. on behalf of AFA.  *Id. ¶* 21.  Payment instructions for this transaction indicate that the payment originated from a company called Hong Kong Xunni Trading Co., Limited.  *Id.*  Finally, a third Florida company, Wintec Enterprise LLC ("Wintec"), appears to have been used to collect payments on behalf of AFA.  In connection with two friendly matches in September 2022, one in Miami and another in New York, Wintec was paid at least US$ 800,000 by Cardenas Marketing Network, Inc. (also known as Grupo Cardenas, Inc. or "CMN") through a Bank of America, N.A. account.  *Id. ¶* 22.

Petitioner seeks information relating to these accounts used as part of AFA's contractual breaches (Tourprudenter's account with Citibank, N.A., Global FC's account with J.P. Morgan

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

Chase Bank, N.A., and Wintec's account with Bank of America, N.A.), as well as other accounts or transactions involving the above-mentioned entities.

## **LEGAL ARGUMENT**

**A.      The Petition is Appropriately Considered *Ex Parte***

This section 1782 Petition should be considered and granted on an *ex parte* basis.  There is no "impropriety in the ex parte nature of the § 1782 application," *In re Hornbeam Corp.*, 722 F. App'x 7, 10 (2d Cir. 2018), because, should a respondent wish to oppose the application, it may seek relief once discovery is served, including by moving to quash the discovery or requesting entry of a protective order limiting its scope, *In re EWE Gasspeicher GmbH*, 612 F. Supp. 3d 402, 403 (D. Del. 2020).

**B.      The Petition Should Be Granted Because the Statutory Requirements and the Discretionary Factors are Satisfied**

Section 1782 petitions should be freely granted in the interest of justice and comity so long as they meet three statutory requirements.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); *In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *1 (D. Del. Aug. 26, 2021) (citing *In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998)).  If the petition meets the statutory requirements, courts further consider four discretionary factors established by the Supreme Court in *Intel*, 542 U.S. at 264-65, bearing in mind section 1782's twin aims of "providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252).

The Petition satisfies the three statutory requirements of Section 1782, and the discretionary factors all weigh in favor of granting the Application.

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

**1.      The Petition Meets the Statutory Requirements of 28 U.S.C. § 1782**

The Petition meets the statutory requirements of Section 1782 for all Respondents.  The statute requires that: "(1) the person from whom discovery is sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding before a foreign or international tribunal'; and (3) the application is made by an 'interested person.'"  *In re Liverpool Ltd. P'ship,* 2021 WL 3793901 at *1 (quoting 28 U.S.C. § 1782(a)).  The Petition easily meets these requirements.

**a.      The Respondents "Reside[]" and are "Found in" this District**

Respondents Citigroup Inc., Bank of America Corporation, and J.P. Morgan Chase & Co. are all incorporated in Delaware.  Declaration of Melissa Donomirski ("Donimirski Decl.") ¶¶ 2-4 and Exh. 1, 3, 6.  Bank of America N.A. "resides or is found in" the District of Delaware because its subpoena processing center is located in Newark, Delaware.  *Id*. ¶ 3.  Respondents therefore reside and are found in the District of Delaware, and the Petition meets section 1782's first statutory requirement.  *E.g. In re Request for Judicial Assistance From the Argentine Labor Court of First Instance No. 54 in Buenos Aires, Argentina*, 715 F. Supp. 3d 735, 736 (D. Md. 2024) (bank resides in the District of Maryland because of situs of subpoena processing center); *In re Letter Request from Chile*, CV No. 1:25-cv-01174-CFC (D.I. 5) (D. Del. Sept. 29, 2025) (granting 1782 application against Bank of America, N.A. because its subpoena processing center is in Delaware); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (corporation is "at home" in its state of incorporation and its principal place of business).  The Petition seeks documents relating to accounts held by respondents' wholly owned subsidiaries.  Citigroup Inc. wholly owns Citibank N.A.; Bank of America Corporation wholly owns Bank of America N.A.; and J.P. Morgan Chase & Co. wholly owns J.P. Morgan Chase Bank, N.A.  Donimirski Decl. ¶¶ 2-4 and Exh. 2, 4, 7.  Because the respondents wholly own the banks where the documents are held, the documents are

8

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

within the "possession, custody, or control" of the respondents. *See In re Liverpool Ltd. P'ship*, 2021 WL 3793901, at *1 ("[B]ecause [Bank of America Corporation] is a Delaware corporation and the parent of BofA Securities, documents that 'reside' with BofA Securities are nonetheless in BAC's possession, custody, and control."). The documents themselves need not be physically located in this District to satisfy the "reside[s] or [is] found in" requirement because the respondents are located here. *Id*.

The Petition therefore meets Section 1782's first statutory requirement.

### b. The Requested Discovery is "For Use" in a Proceeding in an Argentine Court

Petitioner seeks discovery from Respondent "for use in" a breach of contract case that is currently pending in the first instance court for commercial matters in Argentina. Castex Decl. ¶¶ 9. Through this Petition, he seeks information about companies and accounts that he believes were used to collect payments on behalf of AFA in breach of the 2021 Contract. This information can be submitted as evidence and otherwise used in the Argentine Proceeding to prove Mr. Tofoni's damages resulting from AFA's contractual breaches, and later to enforce a favorable judgment. This satisfies the "for use" requirement of section 1782. *See In re Ex Parte Application of Eni S.p.A.*, No. 20-MC-334-MN, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021) (citations omitted).

### c. Petitioner is an "Interested Person" Because he is the Plaintiff in the Argentine Proceeding

Petitioner is an "interested person" for purposes of section 1782 because he is the plaintiff in the Argentine proceeding. *See Intel*, 542 U.S. at 256 (holding "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782") (alteration in original). The third statutory requirement is therefore satisfied.

9

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

**2.      The Court Should Grant this Petition in Its Discretion.**

Granting this Petition is an appropriate exercise of this Court's discretion.  In *Intel*, the Supreme Court articulated four factors to consider in exercising discretion under section 1782: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign [tribunal] to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (4) whether the request is "unduly intrusive or burdensome."  542 U.S. at 264-65. 542 U.S. at 264-65.  All weigh in favor of granting the Petition.

**a.      The Discovery is Sought from Non-Participants in the Foreign Proceeding who are Beyond the Reach of the Argentine Court**

First, courts consider whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case, "the need for § 1782(a) aid generally is not as apparent." *Intel*, 542 U.S. at 264; *see also In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) ("The first *Intel* factor…weighs in [Petitioner's] favor. [Respondent] is not a participant in the foreign litigation and is outside the foreign tribunal's jurisdictional reach.").  Whereas a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence, non-parties "may be outside the foreign tribunal's jurisdictional reach," and "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542 U.S. at 264.

Respondents are not parties to the Argentine Proceeding, and it is not expected that they will be.  As U.S. entities, they are outside the jurisdictional reach of the Argentine court, necessitating section 1782 aid from this Court.  Castex Decl. ¶ 26.  Therefore, Petitioner must rely on international evidence gathering mechanisms to obtain discovery from respondents, such as those provided under section 1782.

10

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

Because Respondents are not parties to the Argentine Proceeding, this factor weighs in favor of granting the Petition.

       **b.**       **There is no Evidence that the Argentine Court Would Reject Discovery Obtained Through the Petition**

Second, the Court may consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

The Argentine Proceeding is an appropriate subject of U.S. judicial assistance. This factor is satisfied so long as there is no "authoritative proof" that the foreign tribunal would reject the evidence obtained through section 1782. *See In re O'Keeffe*, 646 F. App'x at 266. Here, there is no authoritative proof, or in fact any proof, that Argentina or the Argentine court would be hostile to U.S. judicial assistance. To the contrary, U.S. courts have found "no indication that the courts in Argentina would be unreceptive to evidence obtained in the United States." *In re Republic of Argentina*, No. 20-MC-20589, 2020 WL 3046029, at *2 (S.D. Fla. Feb. 12, 2020); *see also Application of First Instance Court in Civil Matters No. 75 in Buenos Aires*, No. 24-MC-20831, 2024 WL 4635163, at *3 (S.D. Fla. Sept. 18, 2024). In addition, the fact that Argentina is a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters reflects its receptivity to evidence obtained abroad. *See In re O'Keefe*, 646 F. App'x at 266. Finally, Petitioner's Argentine counsel has declared that he has no reason to believe that the Argentine court would be unreceptive to evidence obtained through this Petition, and that the evidence can be used by Mr. Tofoni in the Argentine Proceeding to support his claims. Castex Decl. ¶ 28.

Therefore, the second discretionary factor weighs in favor of granting the Petition.

11

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

### c. The Petition does not Circumvent Argentina's Evidentiary Restrictions

Third, *Intel* provides that a district court may consider whether the section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 542 U.S. at 265. This Petition does not circumvent any prohibitions on proof-gathering. It seeks non-privileged information about financial accounts and their owners that may have been used by AFA to engage in transactions in breach of the 2021 Contract. There is no policy in Argentine law that would prohibit use of this type of record. To the contrary, this is the type of information that would ordinarily be used to support a commercial claim like Mr. Tofoni's. Castex Decl. ¶ 28.

### d. The Requests are Narrowly Tailored to Seek Evidence that Is Highly Relevant

Fourth, courts consider whether the discovery is unduly intrusive or burdensome, *Intel*, 542 U.S. at 264-65. For this, the familiar proportionality standard under Fed. R. Civ. P. 26 applies. *See In re Sevier*, 2022 WL 3923679, at *3 (D. Del. Aug. 31, 2022); *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."). Under that standard, the discovery sought here is neither burdensome nor unreasonable.

The document requests, copies of which are attached to the Donimirski Declaration as Exhibit 7, seek records relating to a limited number of accounts that may have been used in connection with AFA's contractual breaches during a limited 3-year time period. This information will assist the Petitioner to establish his damages and to trace funds for the enforcement of an

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER

eventual judgment.  The requests are narrow, and relevant records are likely entirely electronic and easily searchable.

Thus, the discretionary *Intel* factors articulated by the Supreme Court all weigh in favor of granting the Petition.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, the Petition for Judicial Assistance should be granted.

<div align="right">

**STEVENS & LEE, P.C.**

*/s/ Melissa N. Donimirski*
Melissa N. Donimirski (# 4701)
919 North Market Street, Suite 1300
Wilmington, DE  19801
(302) 654-5180
melissa.donimirski@stevenslee.com

*Counsel for Petitioner Luis Guillermo
Tofoni*

</div>

Dated: October 6, 2025

EXHIBIT 2 TO MOTION FOR PROTECTIVE ORDER