**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**

| | |
|---|---|
| IN RE PETITION OF GUILLERMO LUIS TOFONI FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. 4:25-cv-00313-CDL |

**PETITIONER'S OPPOSITION TO TOURPRODENTER LLC'S**
**MOTION FOR PROTECTIVE ORDER**

On October 7, 2025, the Court granted (ECF No. 3) the petition of Petitioner Guillermo Tofoni for authorization to serve a subpoena on respondent Synovus Bank seeking records to support his claims pending in Argentina (the "1782 Application") against the Argentina Football Association ("AFA") (ECF No. 1). In that proceeding (the "Argentine Civil Proceeding"), Mr. Tofoni alleges that AFA used various companies, including intervenor Tourprodenter, to breach its contractual obligations to him and to cause him damages. Therefore, the subpoena served on Synovus Bank on October 8, 2025 sought information regarding accounts held by Tourprodenter and these other entities. At the same time that Mr. Tofoni filed the 1782 Application in this Court, he filed a nearly identical application in the United States District Court for the District of Delaware, seeking authorization to serve subpoenas on other banks that are located there for the same purpose.[1] That application was granted on October 10, 2025.

Mr. Tofoni served the respondent banks beginning on October 8, 2025. By October 21, 2025, the respondent banks began notifying Tourprodenter that its records had been subpoenaed. Despite this notice from the banks in October, Tourprodenter did not contact Mr. Tofoni or seek

---

[1] *In Re Petition of Guillermo Luis Tofoni for Judicial Assistance Pursuant to 28 U.S.C. § 1782*, Case No. 1:25-cv-01217-RGA (D. Del.).

to intervene in this proceeding at that time. By October 22, 2025, the banks began producing documents. When Mr. Tofoni reviewed those productions, he realized that they revealed a massive criminal scheme through which individuals associated with AFA appeared to be fraudulently moving, laundering and stealing AFA funds and violating Argentine tax and foreign exchange regulations. Mr. Tofoni believed it appropriate to bring this criminal conduct to the attention of the Argentine authorities by commencing criminal and administrative proceedings, including the Criminal Case No. 66191/2025 ("Argentine Criminal Proceeding"), in Argentina against the relevant individuals, using the information that he had obtained from the respondent banks. *See* Second Declaration of Francisco Castex in Support of Application of Guillermo Luis Tofoni ("Second Castex Declaration"), attached hereto as Exhibit 1, at ¶¶ 3-4. There was no confidentiality agreement or protective order in place at the time that would prevent Mr. Tofoni from using the documents for this purpose. Tourprodenter was on notice of this use of its documents in Argentina by December 2025, when the Argentine media began reporting on the criminal scheme. Nevertheless, it was not until March 11, 2026, *five months* after it received notice of the subpoenas and *three months* after it learned that its documents were being used for these purposes, that Tourprodenter first contacted Mr. Tofoni to request that a protective order be entered in this proceeding.

When counsel for Tourprodenter contacted Mr. Tofoni to meet and confer, Mr. Tofoni advised that he did not oppose Tourprodenter's request to intervene or the entry of a protective order, but he believed that Tourprodenter's proposed protective order was overly broad and that accusations against Mr. Tofoni should be removed from the documents. Counsel therefore provided redlines of the motion to intervene and the proposed protective order so that the parties could proceed on consent.. Rather than engaging on those issues, Tourprodenter proceeded to file

2

its motion to intervene with a draft motion for protective order (ECF No. 4). The Court granted that motion on March 25, 2026 (ECF No. 8), and on the same day, Tourprodenter moved for a protective order (ECF No. 9).

Mr. Tofoni has three concerns regarding Tourprodenter's proposed protective order. First, because Tourprodenter waited months to seek relief, Mr. Tofoni has already lawfully used the documents received from Synovus outside of the Argentine Civil Proceeding, and information regarding unlawful transactions in Tourprodenter's accounts has been widely reported in the Argentine media. That cannot now be undone. Therefore, Mr. Tofoni vehemently opposes Tourprodenter's proposal to apply the protective order retroactively, so that Mr. Tofoni would be required to claw back documents that were lawfully produced and used. Second, Mr. Tofoni submits that he should be permitted to continue to use the discovery that he has obtained here in other proceedings in Argentina that fall within the scope and purpose of § 1782, such as the now-pending Argentine Criminal Proceeding. There was no restriction on Mr. Tofoni using the discovery for other permissible purposes, and he should not be restricted from continuing to cooperate with the Argentine authorities in pursing charges against the Defendants in that or in any other proceeding permissible under § 1782. Third, language in the protective order that falsely accuses Mr. Tofoni of wrongdoing and serves no other purpose should be removed.

## A. Tourprodenter Has Been on Notice of the Subpoenas Since October 2025

As an initial matter, the Court's Order (ECF No. 8) cites FRCP 45(a)(4) as requiring notice to Tourprodenter of the subpoena to Synovus Bank, but the undersigned understands that rule to require notice to a "party." *See, e.g., Kemper v. Equity Ins. Co.*, No. 1:15-CV-2961-TCB, 2016 WL 7428215, at *6 (N.D. Ga. Apr. 29, 2016); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 111743, at *2 (N.D. Fla. Jan. 12, 2021). At the time the subpoena

was served, and until Tourprodenter intervened in this proceeding and the related proceeding in the District of Delaware, Tourprodenter was not a party to any proceeding involving Petitioner.

Moreover, beginning on October 21, 2025, Tourprodenter was timely notified of the subpoenas by at least two of the banks that Mr. Tofoni subpoenaed.  At minimum, Bank of America and JP Morgan Chase mailed notice of the subpoenas to Tourprodenter on October 21, 2025, and November 10, 2025, respectively. Mr. Tofoni understands that banks often notify account holders of subpoenas for their records where, as here, they are not prohibited from doing so. As a result, Tourprodenter did receive timely notice of the subpoenas, and therefore had the opportunity to object, but did not seek relief from this Court until now, even though it knew by December 2025 that its account information was being used in Argentina.

**B.  The Section 1782 Application Was Proper**

Tourprodenter incorrectly suggests that nefarious motives led to Mr. Tofoni's filing of this Section 1782 Application. As Mr. Tofoni explained in the Section 1782 Application, he needed information from Synovus Bank in support of his breach of contract claims against AFA, and in particular to assist with calculating damages caused by the breach. Mr. Tofoni was entitled to the exclusive rights to arrange soccer matches for the Argentine National Soccer Team. However, AFA breached the parties' contract and excluded Mr. Tofoni from the arrangement of matches, depriving him of his commissions. The Section 1782 discovery was for the purpose of demonstrating AFA's profits from those matches so that Mr. Tofoni could determine his losses.

Tourprodenter relies on a declaration by the Argentine lawyer Maximiliano Rusconi, who states that he reviewed the case file "through the Judicial Case Management System—LEX 100— and did not observe that, as of that date, Tofoni had submitted financial documents of Tourprodenter similar to those [subpoenaed in these proceedings]." (ECF No. 9, Ex. 6, ¶ 9). From

this review alone he concludes that Petitioner must not have really intended to use the section 1782 discovery for that proceeding. Mr. Rusconi's assumption is unfounded. That case is ongoing, and it is not currently in the appropriate procedural posture for Mr. Tofoni to use the discovery. *See* Second Castex Declaration at ¶ 2. It remains Mr. Tofoni's intention to use this information, which, as stated in the 1782 Application, is valuable to him in calculating his damages. *Id.*

In any case, even if Mr. Tofoni did not ultimately use the section 1782 discovery in the Argentine Civil Proceeding, that would not invalidate his request for relief. There is no requirement that section 1782 discovery be used in a foreign proceeding, the only requirement is that it can be used. *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) ("Section 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the opposite … The Magistrate Judge did not err by granting discovery 'for context,' when such discovery is allowed under Rule 26(b)(1)."). While Mr. Tofoni still intends to use the documents discovered, there are myriad reasons why such discovery might not immediately or ultimately be used as evidence in a foreign proceeding.

**C.  The Section 1782 Discovery Was Properly Used in the Argentine Criminal Proceeding**

The documents that Mr. Tofoni received through the 1782 Application revealed a massive criminal scheme that he believed appropriate to bring to the attention of Argentine authorities by filing criminal proceedings against the relevant parties. In Argentina, as in other civil law jurisdictions, an individual complainant may commence and participate in criminal proceedings, including by submitting evidence. Absent a protective order – there was not one – Section 1782 discovery may be used in separate proceedings, including the now pending Argentine Criminal Proceeding. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect

to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.").

The Argentine Criminal Proceeding itself would have constituted an independent and proper basis for Section 1782 assistance. The statutory requirements for section 1782 assistance are satisfied with respect to the Argentine Criminal Proceeding: (1) Synovus Bank is found in this District; (2) the discovery would be "for use" in an Argentine tribunal; and (3) Mr. Tofoni is the criminal complainant and has the right to present evidence in the proceeding, making him an "interested person." *See* Second Castex Declaration at ¶¶ 4-5. Courts routinely grant Section 1782 assistance to private complainants involved in criminal proceedings. *See, e.g., In re Selman*, No. CV 23-895-CJB, 2024 WL 1092025 (D. Del. Mar. 13, 2024) (criminal complaint filed in the criminal court of Santiago, Chile); *In re Bureau Veritas*, No. 5:22-MC-80132-EJD, 2022 WL 3563773 (N.D. Cal. Aug. 17, 2022) (same, in the District of Pinhais, Brazil); *In re: Application*, No. 3:23-MC-00841-AN, 2024 WL 35454 (D. Or. Jan. 3, 2024) (same, in Paraguay); *Campos-Alvarez v. Newmont Mining Corp.*, No. 1:14-CV-00208-REB, 2015 WL 1228262 (D. Colo. Mar. 16, 2015) (same, in Peru).

The *Intel* discretionary factors are also satisfied: (1) Tourprodenter is not itself a party to the Argentine Criminal Proceeding; (2) Argentine criminal courts are receptive to the evidence sought; (3) no Argentine rule on proof-gathering is circumvented; and (4) the request targeted a clearly defined and limited category of documents, as previously found by this Court. *See* ECF No. 3; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

The information obtained through discovery in this proceeding revealed facts that gave rise to a criminal complaint in Argentina. Mr. Tofoni was entitled to use this information for that purpose and should be permitted to continue to do so. *See Glock v. Glock, Inc.*, 797 F.3d 1002,

1007–08 (11th Cir. 2015) ("[N]othing precludes [a party] from using that evidence in a wholly separate lawsuit … even though she would not have had those documents to use in the second case had she not lawfully received them as discovery in the first case."). While Mr. Tofoni does not object to the entry of an appropriate protective order, such protective order should permit Mr. Tofoni to use the documents produced here in connection with any proceeding in Argentina that falls within the scope and purpose of Section 1782.

### D.  There is No Basis for Retroactive Application of the Protective Order

Tourprodenter's request for retroactive relief is inappropriate under the circumstances of this case. Tourprodenter knew months ago that its bank records had been subpoenaed, produced, and used, but it made a strategic decision not to object. There is no legal basis for retroactive relief now. *See Webb v. Butler,* No. 5:18-CT-3127-FL, 2021 WL 10364882, at *2 (E.D.N.C. Sept. 14, 2021), aff'd, No. 21-7441, 2023 WL 2597604 (4th Cir. Mar. 22, 2023) (declining to issue a retroactive protective order where plaintiff waited over five months before seeking a ruling on a motion for protective order). The lawful use of the discovery produced by Synovus cannot be undone, and the burden that Tourprodenter's proposed claw back provisions would put on Mr. Tofoni is unwarranted. The court should reject paragraph 10 of Tourprodenter's proposed protective order.

### E.  Tourprodenter's Accusations Should be Removed From the Protective Order

Paragraphs 1 and 9 of Tourprodenter's proposed protective order improperly embed unfounded accusations of misconduct that serve no other purpose. Paragraph 1 asserts a need "to prevent misuse or public dissemination" of materials, and paragraph 9 proceeds from the premise that Mr. Tofoni has disclosed Tourprodenter's information to unauthorized persons, despite the

undisputed fact that no protective order or use restriction existed. These sections should also be removed from the protective order.

### F. The Court Should Enter Mr. Tofoni's Proposed Protective Order

Consistent with counsel's position during the meet and confer process, Mr. Tofoni does not oppose entry of a protective order that addresses Tourprodenter's confidentiality concerns on a prospective basis, eliminates accusatory language, and allows Mr. Tofoni to continue to use the discovery in legal proceedings in Argentina. Accordingly, Mr. Tofoni submits herewith a proposed protective order that serves all of these interests. For the Court's convenience, counsel has included a redlined version of the proposed protective order as Exhibit 2, reflecting all changes to Tourprodenter's proposal.

<strong>CONCLUSION</strong>

For the foregoing reasons, Tourprodenter's motion should be denied to the extent that the proposed protective order applies retroactively, includes accusations against Mr. Tofoni, and prohibits Mr. Tofoni's use of the discovery in other legal proceedings in Argentina. The Court should instead grant Mr. Tofoni's proposed protective order, which is filed contemporaneously herewith as Exhibit 3.

Respectfully submitted,

**Dated:** April 7, 2026

**GRUBMAN WARNER BERRY LLP**

**_/s/ Scott R. Grubman_**
Scott R. Grubman
Georgia Bar No. 317011
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171
sgrubman@gwbfirm.com

*Counsel for Petitioner*
*Guillermo Luis Tofoni*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 7, 2026, the foregoing was filed with the Court's CM/ECF system that will serve a true and correct copy with all counsel of record.

/s/Scott R. Grubman
Scott R. Grubman

12