# EXHIBIT "1"

## <u>SECOND STATEMENT OF MAXIMILIANO RUSCONI</u>

I, Maximiliano Rusconi, hereby declare under penalty of perjury pursuant to the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1. I am an attorney duly admitted to practice law in the Republic of Argentina, with more than thirty years of experience in the practice of Criminal Law and Criminal Procedure. In addition to my law degree, I hold a Doctorate in Law from the University of Buenos Aires and have been awarded the degree of Doctor Honoris Causa by the Catholic University of Cuenca (Ecuador). Throughout my professional career, I have held various public offices, including that of Attorney General (Fiscal General) at the Office of the Attorney General of the Nation (1998–2000), and I have served as an advisor to different public institutions and international organizations in criminal matters, including the United Nations Development Programme (UNDP). I have also been appointed as a member of selection panels for magistrates of the Public Prosecution Service and the Judiciary, at both the national and provincial levels, and I have served as an advisor to the Ministry of Justice of the Nation, the Penitentiary Prosecutor's Office, the Ministry of Security, the Chamber of Deputies of the Nation, the Office of the Public Defender General of the Nation, the Office of the Attorney General of the Nation, the Office of the Prosecutor General of the City of Buenos Aires, and the Legislature of the City of Buenos Aires.

2. I currently serve as Founding Partner and Managing Partner of the firm Estudio Rusconi-Palmeiro & Asociados Abogados & Consultores, with offices in Buenos Aires, Argentina.

3. In addition to my practice as a litigator, I serve as a professor of Criminal Law and Criminal Procedure at various universities, including the University of Buenos Aires. I am a

1

member of the International Foundation of Criminal Sciences and of the Academic Council of the Bulletin of the Latin American Research Group of the Department of Foreign and International Criminal Law of the Institute of Criminal Sciences of Georg-August-Universität Göttingen (Germany). I have also served as a tenured professor in the Master's Program in Law and as a member of the Academic Committee of the Faculty of Law of the University of Palermo (Argentina), as well as Honorary Professor at San Martín de Porres University (Lima, Peru). On multiple occasions, I have supervised and served as a member of examination committees for doctoral and master's theses at the University of Buenos Aires and the University of El Salvador (Argentina).

4.      My law firm and I represent Javier Horacio Faroni and Erica Gabriela Gillette, husband and wife, in Criminal Case No. 66191/2025, currently pending before the Argentine courts (the "Criminal Case").

5.      I submit this declaration based on my personal knowledge, acquired in the course of my professional work as defense counsel in the Criminal Case, and for the purpose of addressing what I consider to be inaccurate assertions made by counsel for Guillermo Luis Tofoni ("Tofoni"), Francisco Castex ("Castex"), in the statement he rendered on April 7, 2026.

6.      First, it is not true that the authorities have issued any decision in the Criminal Case authorizing Tofoni to submit or obtain evidence from the defendants or witnesses; much less to seek banking or financial information comparable to that which he himself pursued before courts in the United States, allegedly for purposes of obtaining information for the case "*Tofoni, Guillermo Luis v. Argentine Football Association (A.F.A.), re: Breach of Contract*" (Case No. CIV 084904/2023) (the "AFA Case"). Under Argentine law, private complainants (*querellantes*) are not permitted to compel a bank or other entity to disclose this type of sensitive information for use in a criminal proceeding. Such requests must be issued by a judicial authority, following a showing of relevance and proportionality by one of the parties, and after the remaining parties

2

have been afforded an opportunity to be heard with respect to the specific request for information.

7. In this regard, by way of example, it should be noted that in case FLP 29107/25, pending before Federal Criminal Court No. 2 of Lomas de Zamora, the Federal Prosecutor, Dr. Cecilia Incardona, on February 2, formally requested the competent court to order the following: "…*a. That an international letter rogatory be issued to the competent authorities of the United States of America in order to request: (1) the corporate records, articles of incorporation, and identification of the beneficial owners of TourProdEnter LLC, Marmasch LLC, Soagu Services LLC, Velpasalt LLC, and Velp LLC, as well as their registered addresses; (2) the complete bank account statements of AFA and TourProdEnter LLC, including account-opening documentation, authorized signatures, and records of transfers to or from the Republic of Argentina; (3) all documentation relating to service or consulting contracts that justify the flow of funds between these entities and the Argentine Football Association; and (4) the contracts entered into by TourProdEnter LLC with other companies while representing AFA…*". The aforementioned case is related to the complaint previously filed by Mr. Tofoni, and the measure requested by the Federal Prosecutor demonstrates, on the one hand, the procedural requirements imposed by the Argentine procedural system and, on the other, confirms the impossibility of introducing evidence generated through an independent and autonomous action by a private complainant.

8. Furthermore, I must report that on March 18, 2026, Dr. Francisco Castex formally resigned as counsel for Mr. Tofoni in Criminal Case No. 66191/2025, stating as follows: "*For strictly professional reasons, we hereby resign from representing Mr. Guillermo Tofoni in this private criminal complaint.*" Likewise, according to the records of the Lex 100 Judicial Management System in the matter known as the "AFA Case" (Case No. CIV 084904/2023), Dr. Castex does not perform any professional function or hold any role whatsoever in that proceeding. This information is relevant to assessing Dr. Castex's statements, as, according to the

3

court records, he was not counsel for Mr. Tofoni in the civil case and had already resigned his representation in the criminal case prior to submitting the declaration at issue in these proceedings.

9.    Additionally, Tofoni's status as a private complainant (*querellante*) in the Criminal Case is currently under challenge as a result of a motion raising lack of standing (*falta de acción*) filed by my clients and other defendants in the Criminal Case. Specifically, on February 27, 2026, my clients filed a petition before the judge presiding over National Criminal and Correctional Court No. 11, contesting whether Tofoni suffered a special, singular, individual, and direct injury, as required under Article 82 of the National Code of Criminal Procedure. Indeed, Tofoni's complaint did not allege any fraudulent administration committed to his own detriment. That alleged harm had already been the subject of a prior complaint, in which the accused parties were dismissed (*sobreseídos*).

10.    In response to the motions filed by my clients and other defendants challenging Tofoni's standing as a private complainant, National Criminal and Correctional Court No. 11 ordered, on March 2, 2026, the initiation of an "incidental proceeding" addressing lack of standing. Under the National Code of Criminal Procedure, an incidental proceeding is an ancillary procedure within the main criminal case that is opened to resolve a specific issue that does not address the merits of the case but may affect its course or validity. As of the date hereof, this incidental proceeding remains pending resolution. If resolved in favor of the defendants, Tofoni will be removed as a party from the Criminal Case and will lack standing to submit any further requests to the courts in that matter.

11.    Second, there are grounds to question Castex's assertions that Tofoni did not intend to use the materials obtained through U.S. discovery to initiate the Criminal Case, and that he proceeded instead because he "felt compelled" to bring the matter to the attention of the

4

Argentine authorities. Under Argentine law, Tofoni was under no legal obligation to file a criminal complaint or to use the banking and financial information purportedly related to TourProdEnter LLC ("TourProdEnter") in order to pursue the Criminal Case. Argentine law does not impose such a duty on private individuals—particularly where, as here, Mr. Tofoni had previously reported the same facts to the Federal Judiciary without success. This issue will be addressed further below.

12.    Certainly, Tofoni had no legal basis to accompany such filings with multiple interviews or media statements, as he has been doing, presumably for the purpose of advancing his civil claims against AFA. There are no formal or publicly visible records in the Lex 100 Judicial Management System indicating that the information obtained through discovery was actually used in the civil case for which it was requested. Likewise, the procedural stage for offering evidence in support of a civil claim has already elapsed without Tofoni having formally requested or submitted such evidence.

13.    From this, it follows as highly probable that, from the outset, Tofoni contemplated the eventual use of that information within the framework of a criminal proceeding, notwithstanding the fact that he did not disclose such intent. In fact, the updates or extensions of the discovery obtained during February of the current year were carried out after the criminal case had already been initiated. Nevertheless, this circumstance was not disclosed, and the same wording and justification used in prior discovery requests was maintained, continuing to allege that the information was needed for a civil case.

14.    Nor is there any explanation for Tofoni's statements in his filings before Argentine courts claiming that the "U.S. judicial authorities," within the context of discovery proceedings, had concluded that his claim against AFA was "legally viable," and that this supposedly implied "a prior recognition of standing and the existence of a possible direct financial injury." No court in the United States has issued any ruling whatsoever on the merits of those claims.

5

15.     My clients' position is that Tofoni filed the new complaint for the purpose of advancing his economic claims against AFA and, at the same time, attempting to revive a criminal proceeding that he himself initiated on April 20, 2023 and which concluded with the dismissal of the accused parties. That proceeding corresponds to Case CFP 1292/2023, captioned "Tapia, Claudio Fabián s/ defraudación por desbaratamiento e infracción del art. 303. Denunciante: Tofoni, Guillermo Luis."

16.     In the first criminal case, Tofoni reported the President of AFA and "any other person who is proven or suspected to be a co-author, accomplice, instigator, or accessory after the fact" of the offenses of interference with vested contractual rights (Article 173(11) of the Criminal Code), money laundering (Article 303 of the Criminal Code), and/or any other offense that might ultimately be determined. In the course of that proceeding, Tofoni requested that the authorities investigate my clients and TourProdEnter. As in the present Criminal Case, Tofoni also requested that Argentine authorities investigate the alleged fraud and money-laundering activities purportedly arising from AFA's transactions following the termination of its agreement with him.[1]

17.     On September 6, 2023, Federal Criminal and Correctional Court No. 10, presided over by Judge Julián Ercolini, ordered the dismissal (*sobreseimiento*) of the first case. That decision was affirmed by the various appellate instances in Argentina, following the multiple ordinary and extraordinary appeals filed by Tofoni between 2023 and 2024. In that ruling, Judge Ercolini emphasized that Tofoni's allegations concerning TourProdEnter lacked factual and legal support.

18.     In that context, on February 27, 2026, my clients requested that the judge presiding over National Criminal and Correctional Court No. 11 dismiss the new Criminal Case pursuant to

---

[1] It should be noted that, in his new complaint, Tofoni, together with his counsel, reiterates—possibly with passages copied verbatim—the filings from the first case.

the principle prohibiting double jeopardy (*non bis in idem*). That request is currently pending resolution. Should it be granted—an argument that has also been raised by other defendants in the Criminal Case—the proceedings would be terminated.

19.    In light of the foregoing, the use of TourProdEnter's banking information in the new Criminal Case is not the result of any legal obligation, but rather of a strategic decision voluntarily adopted by Tofoni.

20.    Finally, even assuming that the Criminal Case were to be committed for trial after completion of the investigative stage, I consider it unlikely that Argentine courts would accept the use of TourProdEnter's banking information obtained by Tofoni in the United States. This is, first, because such sensitive information cannot be obtained directly by a private complainant, but only through a reasoned judicial request subject to adversarial review. Moreover, the information was obtained under the asserted purpose of being used in the AFA Case, which raises serious questions regarding its admissibility in an independent proceeding.

21.    Under Argentine criminal procedural law, evidence must be obtained and produced in compliance with due process guarantees and with respect for the principles of legality and good faith. Accordingly, the use of evidentiary materials obtained for a purpose different from that asserted may result in their exclusion. In particular, evidence obtained through methods involving deception, simulation, or abuse of rights lacks the capacity to support a valid judicial decision and may be declared inadmissible or void. Under such circumstances, the introduction and potential assessment of TourProdEnter's banking information obtained by Tofoni could compromise the very validity of the proceedings.

22.    I am in possession of the documents from the Criminal Case referenced above; however, I have refrained from attaching them to this Statement in light of the confidentiality obligations applicable to me in the Criminal Case, without prejudice to the need to inform courts

7

in the United States of the irregularities described herein. As a matter of law, the records of the

Criminal Case may be accessed only by the parties to the proceedings.

Signed in the City of Buenos Aires, Argentina, on the 9th day of March, 2026.—

**Maximilian Rusconi**

RUSCONI
Maximiliano
Adolfo

Digitally signed by RUSCONI Maximiliano
Adolfo
DN: C=AR, CN=RUSCONI Maximilian
Adolfo, serialNumber=CUIL 20180648020
Reason: I am the author of this document
Location:
Date: 2026.04.10 16:48:32- 03'00'
Foxit PDF Reader Version: 2025.3.0

8

morningtrans.com

# TRANSLATION CERTIFICATION

Date: 2026/04/13

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Spanish (Latin America)

To:

- English (USA)

The documents are designated as:

- 'Segunda Declaración Maximiliano Rusconi.pdf'

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_Samuel Wu_

Signature of **Samuel Wu**, Managing Director

## SEGUNDA DECLARACIÓN DE MAXIMILIANO RUSCONI

Yo, Maximiliano Rusconi, declaro bajo pena de perjurio conforme a las leyes de los Estados Unidos de América que lo siguiente es verdadero y correcto según mi leal saber y entender:

1.      Soy abogado matriculado en la República Argentina, con más de treinta años de experiencia en el ejercicio del Derecho Penal y Procesal Penal. Además de mi título de abogado, poseo el grado de Doctor en Derecho por la Universidad de Buenos Aires y he sido distinguido como Doctor Honoris Causa por la Universidad Católica de Cuenca (Ecuador). A lo largo de mi trayectoria profesional, he ocupado diversos cargos públicos, entre ellos el de Fiscal General de la Procuración General de la Nación (1998–2000), y he actuado como asesor de distintas instituciones públicas y organismos internacionales en materia penal, incluido el Programa de las Naciones Unidas para el Desarrollo (PNUD). Asimismo, he sido designado miembro de jurados para la selección de magistrados del Ministerio Público y del Poder Judicial, tanto a nivel nacional como provincial, y me he desempeñado como asesor del Ministerio de Justicia de la Nación, la Procuración Penitenciaria, el Ministerio de Seguridad, la Cámara de Diputados de la Nación, la Defensoría General de la Nación, la Procuración General de la Nación, la Fiscalía General de la Ciudad de Buenos Aires y la Legislatura de la Ciudad de Buenos Aires.

2.      Actualmente, me desempeño como Socio Fundador y Gerente de la firma Estudio Rusconi-Palmeiro & Asociados Abogados & Consultores, con sede en Buenos Aires, Argentina.

3.      Además de mi ejercicio como litigante, me desempeño como catedrático de Derecho Penal y Procesal Penal en diversas universidades, incluida la Universidad de Buenos Aires. Soy miembro de la Fundación Internacional de Ciencias Penales y del Consejo Académico del Boletín del Grupo Latinoamericano de Investigación del Departamento de Derecho Penal Extranjero e Internacional del Instituto de Ciencias Criminales de la Georg-August-Universität Göttingen (Alemania). Asimismo, he sido profesor titular de la Maestría en Derecho y miembro del Comité

1

Académico de la Facultad de Derecho de la Universidad de Palermo (Argentina), así como Profesor Honorario de la Universidad San Martín de Porres (Lima, Perú). En múltiples oportunidades he dirigido y participado como jurado de tesis doctorales y de maestría en la Universidad de Buenos Aires y en la Universidad del Salvador (Argentina).

4.      Mi estudio jurídico y yo representamos Javier Horacio Faroni y Erica Gabriela Gillette, marido y mujer, en la Causa Penal No. 66191/2025, en trámite ante la justicia argentina (la "Causa Penal").

5.      Formulo la presente declaración sobre la base de mi conocimiento personal, adquirido en el ejercicio de mi labor profesional como defensor en la causa penal, y con el propósito de referirme a lo que considero son afirmaciones desacertadas por parte del abogado de Guillermo Luis Tofoni ("Tofoni"), Francisco Castex ("Castex"), en su declaración rendida el 7 de abril de 2026.

6.      En primer lugar, no es cierto que las autoridades hayan dictado una decisión en la Causa Penal que autorice a Tofoni a presentar u obtener pruebas por parte de los demandados o testigos; mucho menos a formular requerimientos de información bancaria y financiera similares a los que él mismo tramitó ante la justicia de los Estados Unidos, bajo el pretexto de obtener información para el caso *"Tofoni, Guillermo Luis c/ Asociación del Fútbol Argentino (A.F.A.) s/ Cumplimiento de Contrato"* (expediente CIV 084904/2023) (el "Caso AFA"). En Argentina, los querellantes no pueden conminar a un banco u otra entidad a entregar este tipo de información sensible para su uso en un caso penal. Dicho requerimiento debe provenir de una autoridad judicial, previa justificación de su pertinencia y proporcionalidad por alguna de las partes, y luego de que las demás hayan tenido la oportunidad de pronunciarse sobre el pedido concreto de información.

7.      En este sentido, a modo de ejemplo se informa que, por otra parte, en la causa FLP 29107/25 del registro del Juzgado Federal N° 2 de Lomas de Zamora, la Fiscal Federal, Dra. Cecilia

2

Incardona, el pasado 2 de febrero ha solicitado al Juzgado oportunamente interviniente *"...a. Se libre exhorto internacional a las autoridades competentes de los Estados Unidos de América a fin de requerir: 1. Los registros societarios, actas de constitución e identificación de beneficiarios finales de TourProdEnter LLC, Marmasch LLC, Soagu Services LLC, Velpasalt LLC y Velp LLC y domicilios constituidos. 2. Los estados de cuenta bancarios completos de AFA y TourProdEnter LLC, incluyendo formularios de apertura, firmas autorizadas y registros de transferencias hacia o desde la República Argentina. 3. Toda documentación relativa a contratos de servicios o asesoramiento que justifiquen el flujo de fondos entre estas entidades y la Asociación del Fútbol Argentino. 4. Se informe los contratos que firmó TourProdEnter LLC con otras empresas representando a AFA..."*. El expediente mencionado resulta ser conexo con la denuncia iniciada por el señor Tofoni y la medida requerida por la señora fiscal evidencia, por un lado, las exigencias procesales requeridas por el sistema procesal argentino y, por el otro, confirma la imposibilidad de introducir prueba generada por una actuación independendiente y autónoma del acusador privado.

8.    Por otro lado debo informar que el Dr. Francisco Castex, con fecha 18.03.2026, renunció al patrocinio del señor Tofoni en el marco de la causa 66191/2025 (expediente penal), con la siguiente manifestación *"Por motivos de estricta índole profesional, venimos a renunciar al patrocinio letrado del señor Guillermo Tofoni en esta querella."*. Del mismo modo, informamos que de acuerdo a las constancias del Sistema de Gestión Judicial Lex 100 de la causa denominada como el "Caso AFA" (expediente CIV 084904/2023), el doctor Castex no ejerce función profesional o rol alguno en dicho proceso. Lo expuesto resulta de relevancia para valoración de lo manifestado por el Doctor Castex en tanto, de acuerdo a lo que se informó, no es letrado del señor Tofoni en el expediente Civil y renunció a su patrocinio en la causa penal en forma anterior a efectuar la declaración en este proceso.

9. Adicionalmente, la condición de Tofoni como "querellante" en la Causa Penal se encuentra en discusión a partir de un planeo de excepción de falta de acción del querellante que han sido presentadas por mis clientes y otros querellados en la Causa Penal. En particular, el 27 de febrero de 2026, mis representados presentaron una petición ante la magistrada a cargo del Juzgado Nacional en lo Criminal y Correccional N.° 11 en la que cuestionaron que Tofoni hubiera sufrido un perjuicio especial, singular, individual y directo, tal como lo exige el artículo 82 del Código Procesal Penal de la Nación. En efecto, la denuncia de Tofoni no alegó una supuesta administración fraudulenta en perjuicio propio. Sobre ese supuesto perjuicio ya había denunciado y los imputados fueron sobreseídos.

10. En respuesta a las excepciones planteadas por mis representados y otros querellados, mediante las cuales se impugnó la condición de Tofoni como querellante, el Juzgado Nacional en lo Criminal y Correccional N.° 11 dispuso, con fecha 2 de marzo de 2026, la formación del "incidente" de falta de acción. En el marco del Código Procesal Penal de la Nación, un incidente es un procedimiento accesorio dentro del proceso principal que se abre para resolver una cuestión específica que no constituye el fondo del caso, pero que puede afectar su curso o validez. A la fecha, dicho incidente permanece pendiente de resolución. De resolverse favorablemente a los querellados, Tofoni será apartado de la Causa Penal y carecerá de legitimación para formular solicitudes adicionales ante los tribunales en dicho caso.

11. En segundo lugar, existen razones para cuestionar las afirmaciones de Castex en el sentido de que Tofoni no tenía planeado utilizar los materiales obtenidos mediante el "discovery" para iniciar la Causa Penal; y que así lo hizo porque se "sintió obligado" a poner este asunto en conocimiento de las autoridades argentinas. En Argentina, Tofoni no tenía deber legal alguno de presentar una denuncia ni de utilizar la información bancaria y financiera atribuida a Tourprodenter LLC ("Tourprodenter") para promover la Causa Penal. La ley argentina no impone esa obligación

4

a los privados. Mucho menos cuando el señor Tofoni ya había denunciado con anterioridad, sin éxito, estos mismo hechos ante la Justicia Federal (sobre esto mismo regresaremos más adelante).

12.     Ciertamente, Tofoni no tenía razón legal para acompañar tales presentaciones con múltiples entrevistas ni pronunciamientos mediáticos, como lo ha venido haciendo, presumiblemente con el propósito de impulsar su reclamación de naturaleza civil contra la AFA. No hay constancias formales y visibles en el Sistema de Gestión Judicial Lex 100 que la información obtenida en el Discovery haya sido utilizada en el expediente Civil para el cual la solicito. Del mismo modo, la instancia procesal para ofrecer la prueba de su pretensión en una demanda civil, ya ha sido superada sin que lo haya así solicitado o expuesto.

13.     De ello se deriva como altamente probable que desde un principio, el requirente Tofoni tenía pensado su eventual utilización en el marco de un proceso penal, sin perjuicio de ello, no lo expuso. De hecho las actualizaciones o ampliaciones del Discovery obtenidas durante el mes de febrero del año en curso, se efectuaron ya habiéndose dado inicio a la causa penal, sin perjuicio de lo cual, no fue así declarado, manteniéndose la misma fórmula o solicitud de las oportunidades anteriores, aduciendo su necesidad para un expediente civil.

14.     Tampoco existe explicación para que Tofoni haya manifestado en sus escritos ante los tribunales argentinos que las "autoridades judiciales norteamericanas", en el marco de los procesos de *discovery*, habrían concluido que su reclamo contra la AFA "resultaba jurídicamente atendible" y que ello implicaría "un reconocimiento previo de legitimación y de la existencia de una posible afectación patrimonial directa". Ningún tribunal estadounidense ha emitido pronunciamiento alguno sobre el fondo de tales pretensiones.

15.     La posición de mis representados es que Tofoni presentó la nueva denuncia con el propósito de impulsar sus reclamaciones de carácter económico contra la AFA y, a la vez, en un intento de reactivar un proceso penal que él mismo había iniciado el 20 de abril de 2023 y que

5

concluyó con el sobreseimiento de los imputados. Dicho proceso corresponde a la causa CFP 1292/2023, caratulada "Tapia, Claudio Fabián s/ defraudación por desbaratamiento e infracción del art. 303. Denunciante: Tofoni, Guillermo Luis."

16.    En el primer caso penal, Tofoni denunció al presidente de la AFA y a "toda otra persona que se demuestre o sospeche coautora, cómplice, instigadora o encubridora de los delitos de desbaratamiento de derechos acordados (artículo 173 inciso 11 del Código Penal), lavado de dinero (artículo 303 del Código Penal) y/o el que en definitiva se establezca." En el transcurso de esa actuación, Tofoni solicitó a las autoridades que mis representados y Tourprodenter fueran investigados.  Al igual que en la nueva Causa Penal, Tofoni solicitó a las autoridades argentinas que investigaran la supuesta defraudación y maniobras de lavado de activos originada en las operaciones de la AFA, tras la rescisión de su acuerdo con Tofoni.[1]

17.    El 6 de septiembre de 2023, el Juzgado en lo Criminal y Correccional Federal N.º 10, a cargo del Dr. Julian Ercolini, dictó el sobreseimiento del primer caso, decisión que fue confirmada por las distintas instancias de apelación en Argentina, con motivo de los múltiples recursos ordinarios y extraordinarios interpuestos por Tofoni entre 2023 y 2024. En dicha decisión, el juez Ercolini resaltó que los señalamientos realizados por Tofoni acerca de Tourprodenter carecían de sustento.

18.    En ese sentido, el 27 de febrero de 2026, mis representados solicitaron a la Magistrada a cargo del Juzgado Nacional en lo Criminal y Correccional N.º 11 que desestimara la nueva Causa Penal en aplicación del principio de prohibición de doble incriminación (*non bis in idem*), petición que actualmente se encuentra pendiente. De ser resuelta favorablemente —planteo que también ha sido formulado por otros querellados en la Causa Penal—, el caso sería cerrado.

---

[1]    Cabe destacar que, en su nueva denuncia, Tofoni, junto con sus abogados, reedita —posiblemente con pasajes copiados— las actuaciones del primer caso.

6

19.     A la luz de lo anterior, la utilización de la información bancaria de Tourprodenter en la nueva Causa Penal no obedece a obligación legal alguna, sino a una decisión estratégica adoptada voluntariamente por Tofoni.

20.     Finalmente, aun en el supuesto de que la Causa Penal fuera elevada a juicio una vez concluida la etapa de instrucción, estimo poco probable que los tribunales argentinos resulten receptivos a la utilización de la información bancaria de Tourprodenter obtenida por Tofoni en los Estados Unidos. Ello es así, en primer lugar, porque se trata de información que, por su naturaleza sensible, no puede ser obtenida directamente por un querellante, sino únicamente mediante requerimiento judicial fundado y sujeto al control de las partes. Además, dicha información fue obtenida bajo el pretexto de ser utilizada en el Caso AFA, lo que plantea serios cuestionamientos en torno a su admisibilidad en un proceso independiente.

21.     En el derecho procesal penal argentino, la prueba debe ser obtenida y producida conforme a las garantías del debido proceso y con respeto a los principios de legalidad y buena fe. En ese sentido, la utilización de elementos probatorios obtenidos con una finalidad diversa a la invocada, puede dar lugar a su exclusión. En particular, la prueba obtenida mediante procedimientos que impliquen engaño, simulación o abuso de derecho carece de aptitud para fundar una decisión jurisdiccional válida, pudiendo ser declarada inadmisible o nula. En tales condiciones, la incorporación y eventual valoración de la información bancaria de Tourprodenter obtenida por Tofoni podrían comprometer la validez misma del proceso.

22.     Obran en mi poder los documentos de la Causa Penal mencionados anteriormente; sin embargo, me he abstenido de adjuntarlos a la presente Declaración en atención a los deberes de confidencialidad que me asisten en la Causa Penal, sin perjuicio de la necesidad de poner en conocimiento de las cortes estadounidenses las irregularidades antes mencionadas. En derecho, los documentos de la Causa Penal solo pueden ser consultados por las partes en el proceso.

7

Firmado en la ciudad de Buenos Aires, Argentina, a los 9 días del mes de marzo de 2026.—

**Maximiliano Rusconi**