**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA**

| | |
|---|---|
| **IN RE PETITION OF GUILLERMO LUIS TOFONI FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** | Case No. 4:25-CV-313 |

**TOURPRODENTER, LLC'S OPPOSITION TO PETITIONER'S
MOTION FOR AUTHORIZATION OR LIMITED STAY, AND CROSS-
MOTION TO COMPEL PETITIONER'S COMPLIANCE WITH THE
<u>PROTECTIVE ORDER</u>**

Intervenor Tourprodenter, LLC ("Tourprodenter") opposes Petitioner Guillermo Luis Tofoni's ("Tofoni") Motion for Authorization Pursuant to Paragraph 4 of the Protective Order, or, in the Alternative, for a Limited Stay (ECF No. 26) (the "Motion"), and cross-moves to compel Tofoni's compliance with Paragraph 9 of the Protective Order (ECF No. 25).

Earlier this month, the Court rejected the very same request the Motion now seeks to revive by seeking leave to continue using Tourprodenter's information in four Argentine cases other than the civil action *Tofoni, Guillermo Luis c/ Asociación de Futbol Argentino A.F.A. s/ Cumplimiento de Contrato*, Case No. CIV 084904/2023 (the "AFA Case"): "If Tofoni wishes to use the materials for another purpose, he should file a new § 1782 application." (ECF No. 25) at 3. Based on this concern and other considerations, the Court directed Tofoni to refrain from further use of the § 1782 discovery materials and to undertake reasonable efforts to recover Tourprodenter's information.

The renewed request should be denied because it disregards the Court's express directive, fails to satisfy the standard for reconsideration, and once again fails to meet the requirements of § 1782 for this Court to authorize the use of the discovery materials in four new Argentine cases.

Notably, neither the Motion nor the supporting affidavit of foreign counsel provides any information about the four criminal cases beyond their captions, much less explains the relevance of Tourprodenter's information to each case or why Tofoni would be permitted to provide that information to each court. The Motion likewise relies on case law that does not support the relief Tofoni seeks.

Tofoni alternatively requests a stay of his obligation to undertake reasonable mitigation efforts with respect to the four Argentine criminal courts—namely, sending the same letter he represents having sent to journalists who received the information—unless and until he obtains leave from this Court to continue using the § 1782 materials in those proceedings. Tofoni contends that sending such a letter now could create confusion should he later obtain authorization to use the information again in those cases. But any such confusion is entirely of Tofoni's own making. Had he complied with this Court's orders from the outset of this miscellaneous action—orders expressly limiting the use of the § 1782 materials to the AFA Case—he would not now be required to undertake mitigation measures. In any event, the Protective Order requires only that Tofoni undertake reasonable mitigation efforts; it does not direct the Argentine courts to take any particular action. What, if anything, those courts choose to do with Tofoni's notice regarding the Protective Order is a matter of Argentine law. As explained in the declaration of Professor Maximiliano Rusconi attached as **Exhibit "1,"** Argentine courts possess adequate legal mechanisms to address situations of this nature. The stay Tofoni seeks should therefore be denied.

Lastly, Tofoni has begun acting as though this Court has already granted the relief he seeks in his Motion. On the deadline set by this Court to certify compliance with the Protective Order, he made a submission admitting only "partial" compliance with Paragraph 9 of the Protective Order and treating his pending Motion as a self-executing stay. But court orders are not optional,

nor are they suspended merely because a party seeks further relief. Tofoni also failed to demonstrate compliance with the Protective Order's requirements to notify all recipients of the improperly disclosed materials and undertake reasonable retrieval or mitigation efforts with respect to all third parties to whom the materials were disclosed. The Motion should be denied, and Tofoni should be compelled to fully comply with the Protective Order.

## BACKGROUND

1.      On October 6, 2025, Tofoni filed an *ex parte* application under 28 U.S.C. § 1782, seeking authority to subpoena Synovus Bank ("Synovus") for use in connection with a single foreign proceeding: a pending Argentine civil action styled *Tofoni, Guillermo Luis c/ Asociación de Futbol Argentino A.F.A. s/ Cumplimiento de Contrato*, Case No. CIV 084904/2023 (the "AFA Case"). (ECF No. 1) at 1. The accompanying declaration of Tofoni's former Argentine counsel, Mr. Francisco Castex, tied the requested evidence to damages calculations in that civil case. (ECF No. 1-4) at 1, 4-6 ¶¶ 1, 4, 18-26.

2.      On October 7, 2025, the Court granted the application and authorized a subpoena to Synovus Bank "for the limited purposes described in the Petition." (ECF No. 3) at 1. After it was served with the subpoena, Synovus produced confidential financial records concerning Tourprodenter's accounts (the "Tourprodenter Documents").

3.      Tofoni did not confine his use of the Tourprodenter Documents to the AFA Case. For instance, beginning on December 30, 2025, he filed four criminal complaints in Argentina using, in whole or in part, the Tourprodenter Documents. *See* (ECF No. 26) at 2-3. He disseminated them to Argentine media. *See* (ECF No. 9) at 6-7 ¶¶ 16-17; (ECF No. 20) at 2-4; (ECF Nos. 9-7, 9-8, 20-2, 20-3). He submitted them, on a USB drive, to the Argentine Central Bank (*Banco Central de la República Argentina*, or "BCRA"). *See* (ECF No. 20) at 3-4; (ECF No. 20-4).

4.      Tourprodenter became aware of Tofoni's misuse of the Tourprodenter Documents in February 2026 and, on March 11, 2026, Tourprodenter emailed Tofoni's counsel objecting to Tofoni's misuse of the Tourprodenter Documents. (ECF No. 9) at 7 ¶ 18. Because Tofoni remained determined to continue using the information and refused to undertake remedial measures, the parties were unable to reach a resolution.

5.      As is now known, notwithstanding the conferral between the parties, Tofoni nevertheless filed two additional criminal complaints using the Tourprodenter Documents after that conferral—one for tax evasion (Case No. 335/2026) the day after, on March 12, 2026, and one for money laundering (Case No. 360/2026) one week later, on March 19, 2026. (ECF No. 26-1) at 3 ¶¶ 5-6. None of these uses were disclosed in his petition or authorized by the Court.

6.      After Tourprodenter intervened in this action and moved for a protective order (ECF Nos. 4, 9), the Court entered the Protective Order on April 27, 2026. (ECF No. 25).

7.      Paragraph 4 of the Protective Order limits use of the Tourprodenter Documents to the AFA Case "unless otherwise authorized by this Court." *Id.* at 5 ¶ 4. Paragraph 9 directs Tofoni—within fourteen days—to (a) provide written notice to "each person or entity to whom such materials were disclosed"; (b) "take reasonable steps to retrieve or secure the return or destruction" of the materials; and (c) file a certification "describing the steps taken to comply with this provision." *Id.* at 6 ¶ 9. Paragraph 9 further requires Tofoni to "cease any further dissemination of such materials outside the AFA Case." *Id.* Paragraph 11 provides a mechanism for moving the Court to enforce the Order. *Id.* at 7 ¶ 11. And Paragraph 18 retains the Court's "jurisdiction to interpret, modify, and enforce this Order." *Id.* at 8 ¶ 18.

8.      The April 27 Order rejected Tofoni's argument that the absence of a protective order at production permitted Tofoni's unrestricted use. *See* (ECF No. 25) at 3 ("[T]he Court's order

explicitly limited the purposes for which Tofoni was permitted to obtain discovery of Tourprodenter's financial records: his civil action against the AFA. The subpoenaed materials should not have been used for other purposes without leave of the Court. *If Tofoni wishes to use the materials for another purpose, he should file a new § 1782 application.*") (emphasis added).

9.    A few days later, on May 8, 2026, Tofoni filed the instant Motion. He has not filed a new § 1782 application since the entry of the Protective Order. Rather, he asks the Court in his Motion to authorize the use of the Tourprodenter Documents in four criminal cases he initiated before four different courts in Argentina that charge four different theories: fraudulent administration (Juzgado Nacional Criminal y Correccional No. 11); tax evasion (Juzgado Penal Económico No. 2); money laundering (Juzgado Penal Económico No. 5); and fraudulent accounting (Juzgado Penal Económico No. 8). (ECF No. 26) at 2-3. In the alternative, Tofoni asks the Court to stay the clawback provisions pending a separate § 1782 application (which he has not filed). *Id.* at 9.

10.    The Motion contains no analysis as to each of the four foreign proceedings. *See id.* Its statutory and discretionary factor discussion is contained in a single, generic section that purports to apply to all four foreign proceedings. *See id.* at 5-8. The supporting declaration from Petitioner's foreign counsel, Mr. Alberto Baños (the "Second Baños Decl."), runs three pages, cites no Argentine statute, identifies no legal authority, and likewise does not distinguish among the four foreign cases. *See* (ECF No. 26-1). Nor does it explain the relevance of the Tourprodenter Documents to each of those cases or whether, and on what basis, those documents would be admissible under Argentine law.

11.    Alternatively, Tofoni requests a stay of subsections (a) through (f) of Paragraph 9 of the Protective Order pending resolution of the Motion. (ECF No. 26) at 9. The Motion does not

perform any legal analysis or acknowledge the burden a stay imposes on the movant. Tofoni's stated basis for the stay is that compliance with Paragraph 9 would cause "confusion" in the four Argentine criminal courts. *Id.* at 8. He does not, however, identify any provision of Argentine law that prevents him from sending a written communication to each of the four Argentine criminal courts—courts in which he himself filed the Tourprodenter Documents—identifying the Protective Order and requesting that the materials no longer be used in those proceedings. Nor does he explain how the alleged risk of "confusion" in the Argentine criminal courts would prevent him from sending a communication similar to the one he claims to have sent to the journalists who received the Tourprodenter Documents. As further explained in section III below, Argentine law would not bar him from doing so. Third Rusconi Decl. ¶ 14.

12.     On May 11, 2026—the compliance deadline under the Protective Order, *see* (ECF No. 25) at 6 ¶ 9—Tofoni filed a "Certification of Compliance" (the "Certification") admitting only partial compliance with the Protective Order. *See* (ECF No. 27-1) at 2. The Certification states only that Tofoni provided written notice to unspecified "journalists" advising them of the Protective Order, but it neither identifies those recipients nor states when or how such notice was allegedly transmitted. *Id.* Nor does the Certification or its attachments show that Tofoni provided notice to, or took any steps to retrieve materials from, any other third-party recipients aside from those unidentified "journalists," like the four Argentine criminal courts and the BCRA. *See id.* The Certification cites the pending Motion for Authorization (ECF No. 26) as the explanation for the gap. (ECF No. 27-1) at 2; (ECF No. 27) at 1.

13.     Tourprodenter submits the Third Declaration of Professor Maximiliano Rusconi, former Attorney General of Argentina, addressing each of the four criminal proceedings identified in the Motion. *See* Third Declaration of Maximiliano Rusconi, attached as Exhibit "1" (the "Third

Rusconi Decl."). Among other topics, Mr. Rusconi addresses the foreign-law deficiencies in the Second Baños Declaration, and the availability of procedural remedies under Argentine law to address improperly submitted materials.

## ARGUMENT

### I.    TOFONI'S SECOND IMPROPER REQUEST TO EXPAND HIS § 1782 APPLICATION SHOULD AGAIN BE DENIED.

This Court's Order held that the Tourprodenter Documents "should not have been used for other purposes without leave of the Court" and directed Tofoni to "file a new § 1782 application" for any expanded use. (ECF No. 25) at 3. Tofoni did not do so. Instead, he filed the Motion seeking to renew the same request he previously advanced in his opposition to Tourprodenter's motion for a protective order—namely, authorization to use the § 1782 materials beyond the AFA Case in additional legal proceedings in Argentina. *See* (ECF No. 26). Because Tofoni is disregarding this Court's earlier orders in this matter, the Court has "no affirmative obligation" to entertain Tofoni's request. *In re Mangouras*, 980 F.3d 88, 97 (2d Cir. 2020). *See also Fisher v. Whitlock*, 784 F. App'x 711, 714 (11th Cir. 2019) (affirming a district court's striking of a motion because the movant disregarded the court's prior orders and "advanced the same arguments that [the court] had rejected."). Tofoni's invocation of Paragraph 4 of the Protective Order—the "unless otherwise authorized by this Court" clause, (ECF No. 25) at 5 ¶ 4—is pretextual and should not bypass this Court's earlier explicit orders.

Read in the light most favorable to Tofoni, the Motion is effectively one for reconsideration that does not satisfy the applicable legal standard. Reconsideration is appropriate where the movant demonstrates (i) an intervening change in controlling law, (ii) newly discovered evidence not previously available, or (iii) the need to correct a clear error of law or prevent manifest injustice. *See Hudson Specialty Ins. Co. v. Snappy Slappy LLC*, No. 5:18-cv-00104-TES, 2019 U.S. Dist.

7

LEXIS 73706, at *2 (M.D. Ga. May 1, 2019). The Motion shows none of those grounds. It identifies no intervening law, no new evidence, and no clear error. *See* (ECF No. 26). Rather, it relitigates the same scope-expansion request the Court rejected. *Compare* (ECF No. 18) at 3, 5-6, *with* (ECF No. 26) at 4-9. A motion for reconsideration "may not be used to relitigate old matters or reargue settled issues." *Hudson*, 2019 U.S. Dist. LEXIS 73706, at *2 (citation omitted). *See also Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1378-79 (11th Cir. 2024) (affirming denial of reconsideration where "the movant simply rehashed arguments already considered and rejected.").

Because Tofoni disregarded this Court's express directive to file a new § 1782 application and instead "reargue[d] settled issues" without satisfying the standard for reconsideration, the Motion should be denied. *See* (ECF No. 25) at 3; *Hudson*, 2019 U.S. Dist. LEXIS 73706, at *2.

## II.    THE MOTION FAILS § 1782'S STATUTORY AND DISCRETIONARY REQUIREMENTS.

Section 1782 imposes four statutory requirements that "must be established before a district court may exercise its authority." *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1198-99 (11th Cir. 2016). If satisfied, the court then weighs the four discretionary *Intel* factors. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). The Motion satisfies neither.

### a.    The Motion Does Not Establish that the Tourprodenter Documents Are "For Use" in Any of the Four Argentine Criminal Proceedings.

Tofoni bears the burden of establishing each statutory requirement. *See In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007). The third requirement—that the discovery be "for use in a proceeding in a foreign or international tribunal," 28 U.S.C. § 1782(a)—is satisfied where: (i) the petitioner can "inject the requested information into a foreign proceeding," and (ii) the discovery is "something that will be employed with some advantage or serve some use in the proceeding."

*In re Pinewood Techs. Asia Pac. Ltd. for Judicial Assistance Pursuant to 28 U.S.C. § 1782*, No. 24-60119-CIV-DIMITROULEAS/HUNT, 2024 U.S. Dist. LEXIS 211317, at \*14 (S.D. Fla. Nov. 19, 2024).

The Motion does not satisfy that burden for any of the four Argentine Criminal Proceedings, let alone all four. The Second Baños Declaration provides no more than the case captions and the bare fact that Tofoni initiated each proceeding. (ECF No. 26-1) at 2-3 ¶¶ 4-7. It does not describe the status of any of the four cases, identify the specific facts at issue in any of them, or cite a single Argentine legal authority. *See id.* And, most critically, it does not explain how the Tourprodenter Documents sourced from Synovus will be used in any of them. *See id.* Indeed, the Second Baños Declaration is materially indistinguishable from the conclusory Castex Declaration on which Tofoni relied in his first attempt to expand the § 1782 application's scope, *compare* (ECF No. 18-1), *with* (ECF No. 20) at 6-7—except that it is now even thinner, spread across four proceedings rather than one.

The foreign-law record further undermines the Motion's use showing. The four Argentine Criminal Proceedings remain in a preliminary investigative stage and subject to closure. Third Rusconi Decl. ¶ 12. And Tofoni's status as a complainant—the basis on which he claims any right to submit evidence at all—is itself under active challenge. *Id.* ¶ 11. If successful, Tofoni will be removed from the criminal proceedings and lack any standing to make further submissions to the Argentine courts. *Id.*

Additionally, Tofoni's reliance on *Halliwel Assets, Inc. v. Bracha Foundation*, 663 F. App'x 755 (11th Cir. 2016), is misplaced. (ECF No. 26) at 6. *Bracha* requires that the petitioner have both a "significant role in the process" *and* "significant procedural rights," including the right to "proceed to court if the [foreign body] discontinued the investigation or dismissed the complaint."

9

*Id.* at 763 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004)). But, here, Tofoni's procedural rights are questionable and challenged. *See* Second Rusconi Decl. (ECF No. 20-1) at 5 ¶¶ 9-10; Third Rusconi Decl. ¶ 11.

### b. The Discretionary Factors Weigh Against Expanding Use Beyond the AFA Case.

Even if Tofoni had satisfied § 1782's statutory prerequisites for each of the four cases—and he has not—the Court "is authorized—but not required—to provide judicial assistance." *Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1221 (11th Cir. 2019) (citation omitted). At the outset, Tofoni seeks to "circumvent foreign proof-gathering restrictions." *Fuhr v. Credit Suisse AG*, 687 F. App'x 810, 815-16 (11th Cir. 2017). *See also Del Consumidor v. Coca-Cola Co.*, No. 1:24-cv-03665-TWT-RDC, 2024 U.S. Dist. LEXIS 197146, at *13-19 (N.D. Ga. Oct. 30, 2024) (finding circumvention where petitioner bypassed available foreign proof-gathering procedures by rushing to U.S. court rather than allowing the foreign tribunal to pursue discovery through its own channels).

Under Argentine criminal procedure, a private complainant cannot compel bank records; such a request must come from the Argentine court, supported by a showing of relevance and proportionality and subject to adversarial review. Second Rusconi Decl. (ECF No. 20-1) at 3-4 ¶ 6; Third Rusconi Decl. ¶¶ 5-7. Tofoni has not sought such authorization from any of the four Argentine criminal courts. Third Rusconi Decl. ¶¶ 5-7. Instead, he obtained the records here under the pretext of the AFA Case and then used them in criminal complaints he never disclosed to this Court. *Id.* ¶ 8. Authorizing expanded use would let Tofoni do indirectly—through an unrelated foreign civil proceeding—what Argentine criminal procedure forbids him to do directly.[1] And the

---

[1]    Notably, in one of the Argentine criminal proceedings, the prosecutor formally requested an international letter rogatory to U.S. authorities to obtain the same kind of corporate and banking

Motion's citation to *In re Pimenta*, 942 F. Supp. 2d 1282 (S.D. Fla. 2013), (ECF No. 26) at 6, actually supports Tourprodenter's position: *Pimenta* reaffirmed that § 1782 is "designed to provide discovery in aid of foreign litigation, *not* to provide discovery to justify the reopening of already completed foreign litigation." *Id.* at 1287 (citation omitted) (emphasis added).

The remaining discretionary factors also weigh against authorization. Although Synovus is not itself a participant in the Argentine Criminal Proceedings, Tourprodenter's principals are named defendants in each of the four cases and subject to the jurisdiction of the four Argentine criminal courts. Third Rusconi Decl. ¶ 3. Courts have rejected formalistic readings of whether a respondent is a "participant" for purposes of the first factor. *See In re Inmobiliaria Tova, S.A.*, No. 20-24981-MC-COOKE/O'SULLIVAN, 2021 U.S. Dist. LEXIS 45263, at *25-27 (S.D. Fla. Mar. 10, 2021) (first factor weighs against the Petitioner where "discovery is fundamentally being sought from a participant in the [foreign] proceeding" through a related entity); *El Poder Del Consumidor*, 2024 U.S. Dist. LEXIS 197146, at *13 (first factor "weighs against assistance" as to evidence available from related entities "subject to [the foreign tribunal's] jurisdiction" or "named in [the foreign] complaint"). Tofoni's reliance on *In re Gonzalez*, No. 20-24628-MC-UNGARO, 2021 WL 3835180 (S.D. Fla. Apr. 14, 2021) is misplaced—the Motion does not seek new discovery from Synovus; it seeks expanded use of records already produced. *See* (ECF No. 26) at 6-7. And Synovus's status as a foreign-proceeding participant is immaterial because the Argentine criminal courts can obtain the same information from the named defendants, Tourprodenter's principals, through proper channels. Third Rusconi Decl. ¶¶ 7, 9.

---

records—the same procedure Tofoni circumvented by coming to this Court under the pretext of the AFA Case. Second Rusconi Decl. (ECF No. 20-1) at 4 ¶ 7.

Moreover, Argentine criminal courts are unlikely to be receptive to the Tourprodenter Documents. Receptivity is assessed on "authoritative proof" in the record. *See Diageo PLC*, 925 F.3d at 1222-23. Tofoni offers none. And his reliance on *In re Request for Jud. Assistance From the Nat'l Ct. of Original Jurisdiction No. 68 in Buenos Aires*, 2019 WL 5528394 (M.D. Fla. Oct. 25, 2019), and *In re Request for Jud. Assistance from the First Instance Ct. in Com. Matters No. 28 in Buenos Aires*, 2022 WL 2306843 (M.D. Fla. May 11, 2022), (ECF No. 26) at 7, does not advance his position. Both involved letters rogatory issued by Argentine courts themselves through formal international cooperation channels, and neither concerned a private complainant submitting evidence obtained under pretext over the criminal defendants' objection. *See No. 68 in Buenos Aires*, 2019 WL 5528394; *No. 28 in Buenos Aires*, 2022 WL 2306843. Here, the Argentine criminal courts are unlikely to admit the materials. Third Rusconi Decl. ¶¶ 5, 8-10. In Argentine criminal proceedings, evidence must satisfy requirements of relevance, legality, and admissibility, while also respecting third-party constitutional protections, privacy rights, and confidentiality regimes such as bank secrecy. Third Rusconi Decl. ¶ 5. The Tourprodenter Documents were obtained under the pretext of an unrelated civil case and through procedures unavailable in the criminal cases, making them unlikely to be admitted in those proceedings. *Id.* ¶ 8; Second Rusconi Decl. (ECF No. 20-1) at 8 ¶ 20. Indeed, under Argentine criminal procedural law, evidence obtained by deceptive means may be deemed inadmissible. Third Rusconi Decl. ¶ 10.

Finally, while the Motion analyzes only Synovus's burden, (ECF No. 26) at 7-8, the fourth factor is equally concerned about intrusiveness. *See Intel*, 542 U.S. at 264-65. And the Eleventh Circuit directs district courts to "deny the request when it suspects that the request is a fishing expedition or a vehicle for harassment." *In re Kivisto*, 521 F. App'x 886, 888-89 (11th Cir. 2013) (citation and internal quotation marks omitted). Tofoni has already once disregarded this Court's

order limiting the use of the § 1782 discovery materials, including by disseminating confidential records to Argentine media outlets. *See* (ECF No. 9) at 6-7 ¶¶ 16-17; (ECF No. 20) at 2-4; (ECF Nos. 9-7, 9-8, 20-2, 20-3, 20-4). Authorizing further use would compound Tourprodenter's harm and reward Tofoni's misconduct.

The harassment dimension is also clear here: two of the four criminal complaints Tofoni now asks the Court to authorize—Case No. 335/2026 (tax evasion) and Case No. 360/2026 (money laundering)—were filed *after* Tourprodenter's counsel conferred with Tofoni's counsel on March 11, 2026, to object to Tofoni's misuse of the Tourprodenter Documents. (ECF No. 26-1) at 3 ¶¶ 5-6; (ECF No. 9) at 7 ¶ 18. Filing additional criminal proceedings against Tourprodenter's principals after receiving notice of objection to the very materials he was using is precisely the "vehicle for harassment" the Eleventh Circuit condemns. *See Kivisto*, 521 F. App'x at 888-89.

Because Tofoni has not shown that the Tourprodenter Documents are properly "for use" in the four Argentine Criminal Proceedings, and because the discretionary factors confirm that expanded use would circumvent Argentine procedure and compound the misuse of confidential financial records, the Motion should be denied. *See Clerici*, 481 F.3d at 1331-32; *Fuhr*, 687 F. App'x at 815-16; *Kivisto*, 521 F. App'x at 888-89.

## III. TOFONI'S ALTERNATIVE REQUEST FOR A LIMITED STAY FAILS.

Tofoni's alternative request—a stay of subsections (a) through (f) of Paragraph 9 of the Protective Order—is contained in a single paragraph. (ECF No. 26) at 9. That paragraph does not identify the legal standard for a stay or address the factors a court must weigh. A stay is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 427 (2009). The movant must establish: (i) a strong likelihood of success on the merits; (ii) irreparable harm absent a stay; (iii) lack of substantial injury to the opposing parties; and (iv) that

the public interest favors a stay. *Id.* at 425-26. The first two factors are "the most critical." *Id.* at 434. Tofoni addresses none.[2]

Likelihood of success is absent for the reasons set out above; Tofoni has neither satisfied the reconsideration standard nor carried his burden on § 1782's statutory and discretionary prerequisites. Nor has Tofoni shown irreparable harm, because compliance with a court order is not cognizable injury. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1112 n.20 (11th Cir. 2004) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.") (citation omitted). Conversely, Tourprodenter continues to suffer concrete harm from Tofoni's unauthorized use and dissemination of its confidential financial records, including to Argentine media outlets and the BCRA. *See* (ECF No. 9) at 6-7 ¶¶ 16-17; (ECF No. 20) at 2-4; (ECF Nos. 9-7, 9-8, 20-2, 20-3, 20-4). And the public interest favors enforcing this Court's orders—not suspending them for a non-compliant party. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1268 (11th Cir. 2021) ("protective orders are court orders, and district courts have the inherent power to impose sanctions for failure to comply with their orders.").

Tofoni's assertion that complying with the Protective Order would create confusion in the Argentine proceedings or otherwise be futile fares no better. Argentine law expressly permits courts to review the legality, relevance, and admissibility of evidence submitted in criminal proceedings and to exclude improperly obtained or improperly submitted materials or impose other protective measures as necessary. Third Rusconi Decl. ¶ 13. Nor does Argentine law prevent Tofoni

---

[2] Tofoni's Certification of Compliance admits only "partial" compliance with Paragraph 9 and omits the Argentine criminal courts and the BCRA—the very recipients whose continued possession the Motion seeks to preserve. *See* (ECF No. 27) at 1; (ECF No. 27-1). Because simply filing a motion does not stay a court order, Tofoni's unilateral decision to withhold full compliance further weighs against his stay request. *See Nken*, 556 U.S. at 433-34.

from notifying the relevant courts that he improperly submitted Tourprodenter's information or from requesting the return, destruction, or cessation of use of those materials. *Id.* ¶ 14. To the contrary, such corrective measures are consistent with principles of procedural good faith under Argentine law. *Id.* And if the information were later obtained through lawful means and properly presented, Argentine courts retain full authority to determine the appropriate procedural consequences at that time. *Id.* ¶ 15. In short, Tofoni's alleged "confusion" or "futility" stems not from any limitation of Argentine law, but from the consequences of his own unauthorized dissemination of the § 1782 materials.

Because Tofoni has not addressed—much less satisfied—the stay factors, his alternative request to suspend Paragraph 9 should be denied. *Nken*, 556 U.S. at 425-26, 434.

## IV. TOFONI'S COMPLIANCE WITH PARAGRAPH 9 OF THE PROTECTIVE ORDER SHOULD BE COMPELLED.

The Protective Order vests this Court with "jurisdiction to interpret, modify, and enforce" it. (ECF No. 25) at 8 ¶ 18. Paragraph 11 permits a party to "move the Court for such relief as may be appropriate" when another party is in violation. *Id.* at 7 ¶ 11. That authority is well established. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1266 (11th Cir. 2021) ("To state the obvious, protective orders are court orders, and district courts have the inherent power to impose sanctions for failure to comply with their orders."). The need for enforcement is now apparent from the record: Tofoni's May 11 Certification admits "partial" compliance with Paragraph 9 on its face. (ECF No. 27-1) at 2. Tourprodenter respectfully moves to compel Tofoni to complete that compliance.

### a. The Certification Falls Short of Paragraph 9 on Its Face.

Paragraph 9 of the Protective Order imposes four obligations within fourteen days of entry. (ECF No. 25) at 6 ¶ 9. Tofoni was required to (i) "cease any further dissemination" outside the

15

AFA Case; (ii) "[p]rovide written notice to each person or entity to whom such materials were disclosed" (¶ 9(a)); (iii) "take reasonable steps to retrieve or secure the return or destruction" of the materials (¶ 9(b)); and (iv) "[f]ile a certification with the Court describing the steps taken to comply with this provision" (¶ 9(c)). *Id.*

Tofoni's Certification purports to address only the notice requirement under Paragraph 9(a), and even then, only with respect to a single, unclear category of recipients. He represents that he sent a notice letter to unspecified "journalists." (ECF No. 27-1) at 2. He does not confirm that he indeed provided written notice to "each person or entity" to whom he disclosed the materials. Furthermore, Tofoni undertook no remedial efforts with respect to several other recipients of the Tourprodenter Documents. Tofoni filed the documents in four Argentine criminal courts and also used them before the BCRA. (ECF No. 26) at 2-3; (ECF No. 20) at 4; (ECF No. 20-4). Yet the Certification addresses none of those recipients and identifies no other third-party recipients beyond unspecified "journalists." *See* (ECF No. 27-1) at 2.

Additionally, Tofoni did not comply with subsections (b) and (c) of Paragraph 9. Paragraph 9(b) requires "reasonable steps to retrieve or secure the return or destruction" of the materials. Paragraph 9(c) requires a certification "describing the steps taken." Yet the Certification identifies no actual retrieval efforts and does not establish that any notice letter was ever transmitted to any recipient. Instead, it merely attaches an undated form letter without identifying when, how, or to whom the letter was allegedly sent, while simultaneously conceding that compliance remains only partial. (ECF No. 27-1) at 2.

Tofoni's Certification cites the pending Motion as the reason he did not undertake any reasonable steps to retrieve or secure the return or destruction from the Argentine criminal courts. (ECF No. 27-1) at 2; (ECF No. 27) at 1. But the filing of a motion does not automatically stay an

16

order of the Court. *Nken*, 556 U.S. at 433. Tofoni instead unilaterally decided that compliance could wait. That self-help approach contravenes Paragraph 9 of the Protective Order and is precisely the conduct Paragraph 11 contemplates may be addressed by motion. *See* (ECF No. 25) at 6-7 ¶¶ 9, 11. Tofoni's conduct also confirms that the Motion's "futility" theory is pretextual: Tofoni did not notify the Argentine criminal courts and find compliance futile—he did not approach them at all.

## CONCLUSION

For the foregoing reasons, Tourprodenter respectfully requests that the Court deny the Motion (ECF No. 26) and compel Tofoni to comply with the Protective Order (ECF No. 25). Specifically, Tourprodenter requests that the Court order Tofoni, within two days of the Court's ruling on this Cross-Motion, to: (i) provide written notice to each person or entity to whom the Tourprodenter Documents were disclosed; (ii) take reasonable steps to retrieve or secure the return or destruction of the materials; and (iii) file a revised certification with the Court describing in detail the steps taken to comply with Paragraph 9 of the Protective Order.

Dated: May 18, 2026

Respectfully submitted,

**Clark Hill PLC**
3630 Peachtree Road N.E., Suite 700
Atlanta, GA 30326
Telephone: (470) 845-0207

By: */s/ Lewis P. Perling*
Lewis P. Perling (Georgia Bar No. 572379)
Attorney Email: lperling@clarkhill.com

17

**DIAZ REUS INTERNATIONAL LAW FIRM**
100 Southeast Second Street, Suite 3400
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

By: */s/ Javier Coronado Diaz*
Javier Coronado Diaz (Fla. Bar No. 1047848)
Attorney Email: jcoronado@diazreus.com
(Admitted pro hac vice)
Michael Diaz, Jr. (Fla. Bar No. 606774)
Attorney Email: mdiaz@diazreus.com
(Admitted pro hac vice)
Gabor Gazso von Klingspor (Fla. Bar No. 1058977)
Attorney Email: ggazso@diazreus.com
(Admitted pro hac vice)
John Q. Foster (Fla. Bar No. 1059167)
Attorney Email: jfoster@diazreus.com
(Admitted pro hac vice)

*Counsel for Tourprodenter, LLC*

## CERTIFICATE OF CONFERRAL

The undersigned hereby certifies that on May 18, 2026, Tourprodenter's counsel and counsel for Tofoni conferred through Zoom videoconference. Tofoni opposes the relief sought herein.

*/s/ Javier Coronado Diaz*
Javier Coronado Diaz

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed on May 18, 2026 with the Court's CM/ECF system, which will serve a true and correct copy thereof on all counsel of record.

*/s/ Javier Coronado Diaz*
Javier Coronado Diaz