## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA

**IN RE APPLICATION OF
GUILLERMO LUIS TOFONI FOR
JUDICIAL ASSISTANCE
PURSUANT TO
28 U.S.C. § 1782**

Case No. 4:25-cv-00313-CDL

## PETITIONER'S COMBINED RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REPLY IN SUPPORT OF MOTION FOR AUTHORIZATION

The Court's April 27, 2026, Protective Order[1] provides in relevant part: "This Order is without prejudice to the right of either party to seek relief from the Court, upon good cause shown from any of the provisions contained herein." (Protective Order, Doc. 25, at ¶ 16.) That is precisely what Petitioner has done with its pending Motion for Authorization (Doc. 26): he seeks relief from the Court as expressly contemplated by the Court's Order.

Moreover, good cause exists for Petitioner's requested relief. As Tofoni has explained, Tourprodenter's Materials revealed extensive criminal conduct that is now the subject of four related criminal proceedings in Argentina, proceedings initiated by Tofoni that independently qualify for discovery under 28 U.S.C. § 1782. That same criminal conduct is also now being investigated by the U.S. Department

---

[1] Capitalized terms have the same definitions as in the Motion for Authorization (ECF No. 26).

of Justice, according to a recent article published in the Argentine newspaper *La Nación*, which reports that the Tourprodenter principals are being investigated in connection with the movement of hundreds of millions of dollars in the United States, and that at least $260 million belonging to AFA moved through Tourprodenter's accounts at Synovus and other U.S. banks.[2]

Requiring Tofoni to request destruction of Tourprodenter's Materials now would serve no legitimate purpose and would only waste resources and risk confusion: the same documents are already in use in the Argentine proceedings and, if necessary, would simply be requested again through a duplicative § 1782 application and subpoena and/or though cooperation between authorities in the U.S. and Argentina. The more sensible course is the one the Protective Order anticipates: entry of a further order authorizing use of Tourprodenter's Materials in those proceedings. This course will not prejudice Tourprodenter.

Tourprodenter's opposition does not change that conclusion. Tourprodenter cannot dispute that Tourprodenter's Materials have been, and will be, used to hold Tourprodenter's principals accountable in Argentina for misappropriating hundreds

---

[2] The article, titled *Twelve Days before the World Cup, Three Prosecutors are Investigating Tapia and Toviggino for their Operations in the U.S.*, is available at https://www.lanacion.com.ar/politica/a-doce-dias-del-mundial-tres-fiscales-investigan-a-tapia-y-toviggino-por-sus-operaciones-en-eeuu-nid31052026/. An English machine translation of the article is attached as Exhibit 1 to the Declaration of Scott Grubman.

of millions of dollars from AFA. Instead, Tourprodenter manufactures obstacles by contending that the criminal proceedings do not qualify for § 1782 relief and by mischaracterizing both Tofoni's request and the governing standards. Those arguments fail.

The practical reality is straightforward. Tourprodenter's Materials have already been submitted in the Argentine Criminal Proceedings. Tofoni has no authority to compel the Argentine Criminal Courts to return or destroy them, and they will not do so because the documents are already part of the court docket. Argentine prosecutors also already possess the information and may use it as they deem appropriate. There is therefore no benefit – only inefficiency – in forcing Tofoni to start over with a new § 1782 application to subpoena the same information from Synovus. If anything, this creates additional and unnecessary burden on not only the Court, but a third-party bank as well. Modifying the Protective Order to permit use of Tourprodenter's Materials in the Argentine Criminal Proceedings is reasonable, efficient, and non-prejudicial. Accordingly, the Court should grant Tofoni's Motion for Authorization (Doc. 25) and deny Tourprodenter's cross-motion to compel (Doc. 31.)

## BACKGROUND

On October 6, 2025, Tofoni filed a petition, pursuant to 28 U.S.C. § 1782, seeking authority to subpoena Synovus Bank for account information for

Touprodenter and others. (Doc. 1.) At the time, Tofoni only intended to use the documents in connection with the AFA Case. *Id.* The Court granted the petition the following day, authorizing a subpoena to Synovus. (Doc. 3.) On October 24, 2025, Synovus produced Tourprodenter's Materials.

Upon reviewing Tourprodenter's Materials, Tofoni realized that they reflected significant criminal activity that he felt should be brought to the attention of Argentine authorities. As a result, beginning in December 2025, he filed four criminal complaints in Argentina, each addressed to a different crime, in accordance with jurisdictional requirements (Docs. 18-1 at ¶¶ 3-4, 26-1 at ¶¶ 4-7) and shared certain information with the media (Doc. 27-1.) Though Tourprodenter was notified in October 2025 by various banks that its information had been subpoenaed, and its information appeared in reports by respectable media outlets beginning in December 2025, Tourprodenter did not move to intervene in this proceeding to request a protective order until March 25, 2026. (Docs. 4, 9.) In response, Tofoni wrote to the Court on March 27, 2026, acknowledging the motions and undertaking to only use Tourprodenter's Materials in pending proceedings until the motions were resolved. (Doc. 10 at 4.) Tofoni has complied with this undertaking. (Doc. 26-1 at ¶¶ 4-7.)

On April 27, 2026, the Court entered the Protective Order, which limits use of Tourprodenter's Materials to the AFA Case "unless otherwise authorized by this Court," and directs Tofoni to undertake reasonable notice and retrieval efforts with

respect to prior disclosures outside of the AFA Case. (Doc. 25 at 5–6, ¶ ¶ 4, 9). The Order is "without prejudice to the right of either party to seek relief from the Court, upon good cause shown from any of the provisions contained herein." *Id.* at ¶ 16. This language providing a path for modification was proposed by Tourprodenter. (Doc. 4-1 at 17, ¶5.)

On May 8, 2026, in accordance with paragraphs 7 and 16 of the Protective Order, Tofoni filed the Motion for Authorization, which seeks leave to use Tourprodenter's Materials in the Argentine Criminal Proceedings. (Doc. 26.) On May 11, 2026, Tofoni filed a certification of partial compliance, as required by paragraph 9(c) of the Protective Order. (Doc. 27.) Tofoni explained that he had not yet provided the required notification of the Protective Order to the Argentine Criminal Courts pending this Court's ruling on the Motion for Authorization. *Id*. In the meantime, Maximiliano Rusconi, Tourprodenter's "expert" on Argentine law, who represents the Tourprodenter principals in each of the Argentine Criminal Proceedings,[3] is free to present any argument to the Argentine Criminal Courts that he deems appropriate on behalf of his clients, including that Tourprodenter's

---

[3] Perhaps due to a translation error, Rusconi incorrectly describes himself as the former Attorney General of Argentina. *See* Declaration of Maximiliano Rusconi dated March 14, 2026 ("First Rusconi Decl."), Doc. 9-6 at ¶1; Second Declaration of Maximiliano Rusconi dated March 9, 2026 ("Second Rusconi Decl."), Doc. 20-1 at ¶1. Mr. Rusconi never served in that role, but did serve for two years, from 1998 to 2000, as a general prosecutor in the Attorney General's office. *See* Third Declaration of Alberto Baños dated June 1, 2026 ("Third Baños Decl.") at ¶ 10.

Materials should be destroyed, returned, or deemed inadmissible. Third Baños Decl. at ¶ 9.

Tofoni amended the certification on May 29, 2026, to clarify that he had provided certain additional notifications, including in criminal and Argentine Central Bank proceedings, and that he had taken additional steps to comply with the terms of the Protective Order. (Doc. 32.)

## ARGUMENT

### I.   Tofoni Seeks Authorization Pursuant to the Terms of the Protective Order

Tourprodenter misconstrues the nature of the relief that Tofoni seeks. He does not, as Tourprodenter asserts, seek reconsideration of a court order, and therefore the legal authorities that Tourpodenter cites for the standards applied to a motion for reconsideration are irrelevant. [4]

Instead, Tofoni is following the path proposed by Tourprodenter and adopted by the Court to seek authorization to use Tourprodenter's Materials outside of the AFA Case, and the standard is "good cause." (Doc. 25 at 5 ("Tourprodenter's Materials shall be used solely for the AFA Case and for no other purpose, *unless otherwise authorized by this Court*.") (emphasis added)); (order is "without

---

[4] It is unclear why Tourprodenter cites *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 94 (2d Cir. 2020), which considers whether the filing of a new foreign proceeding can avoid mootness. The other authorities cited in section I of Tourprodenter's opposition involve motions for reconsideration.

prejudice to the right of either party to seek relief from the Court, upon good cause shown from any of the provisions contained herein.”).

Tofoni has demonstrated “good cause.” The Argentine Criminal Proceedings independently qualify for § 1782 relief, and authorization to continue to use the documents in those proceedings would serve the interests of efficiency and justice while avoiding the risk of confusion and delay, as further explained below.

## II.     The Argentine Criminal Proceedings Satisfy the Requirements of § 1782

The only § 1782 statutory requirement that Tourprodenter challenges is the “for use” requirement, which measures “the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal.” *See In re Accent Delight Int’l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original); *see also In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018). Here, Tofoni *has already used* the § 1782 discovery, Second Baños Decl. at ¶¶ 8-10; Third Baños Decl. ¶¶ 3, 6. And Rusconi acknowledges this is the case, noting that “if Tofoni informs the Argentine court that he submitted Tourprodenter information that he should not have submitted,” the judge “may order the exclusion of the evidence.” Third Declaration of Maximiliano Rusconi dated May 15, 2026 (“Third Rusconi Decl.”) at ¶ 13; Third Baños Decl. ¶ 7.  In these circumstances, there is no conceivable argument that the information cannot be used in the Argentine Criminal Proceedings.

Argentine federal prosecutorial authorities have also confirmed that Touprodenter's Materials can be used and have been used in the Argentine Criminal Proceedings. On April 14, 2026, PROCELAC, Argentina's specialized federal economic crime unit issued a report that explains that PROCELAC reviewed Tourprodenter's Materials, verified that they had been obtained through legitimate means (this § 1782 proceeding), and explained that the materials had "singular investigative utility" as the evidentiary foundation for the active criminal investigations and proceedings, including because they provide a roadmap for formal international cooperation requests. *See* Third Baños Decl., Exh. 1 at 1-2.[5]

Rusconi mentions the PROCELAC report (Doc. 29-1 at ¶ 9) but asserts that its conclusions undermine a finding that the "for use" requirement is satisfied here. Not so. The PROCELAC report explains that the same evidence that Tofoni submitted may also need to be obtained through letters rogatory to comply with Argentine evidentiary requirements. It also underscores the substantial value of the evidence that Tofoni submitted *because it told authorities exactly what evidence needs to be requested through formal channels and from whom.* The "for use" requirement is satisfied so long as the petitioner can use the requested discovery to

---

[5] For the Court's convenience, Petitioner has submitted, as Exhibit 1 to the Third Baños Declaration, a certified translation of the portions cited and relied upon in this brief. Should the Court require, Petitioner is prepared to submit a certified translation of the report in its entirety.

8

his advantage in the foreign litigation. *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("for use" analysis requires only that the evidence "will be employed with some advantage or serve some use in the proceeding"); *see also In re Ferrer,* No. 18-20226-CIV, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018). Tourprodenter's Materials were used to substantiate criminal charges and initiate criminal proceedings and to provide a blueprint for prosecutors and the courts to obtain the evidence necessary to prosecute the cases. Therefore, the "for use" requirement is satisfied.

Rusconi also challenges the likelihood that the Argentine Criminal Courts will accept Tourprodenter's Materials as evidence. But that is not a matter for this Court to decide. In a Section 1782 proceeding, "it is the [foreign] court, rather than [the U.S.] Court, [that] should decide whether [ ] additional evidence is admissible." *In re Sergeeva,* No. 113CV03437LMMRGV, 2014 WL 12634281, at *3 (N.D. Ga. Dec. 9, 2014), report and recommendation adopted sub nom. *In re Application of Sergeeva*, No. 1:13-CV-3437-LMM-RGV, 2015 WL 12911329 (N.D. Ga. Feb. 6, 2015); *see also In re Zouzar Bouka*, 637 F. Supp. 3d 74, 84 (S.D.N.Y. 2023) ("[W]e decline to probe the validity of the [foreign proceeding] – whether on the substance of the charges or on the issue of whether [petitioner] was authorized to initiate it . . . . *What matters is whether the proceeding was in fact instituted and whether it is in fact receptive to evidence*.") (emphasis added); *Brandi-Dohrn v. IKB Deutsche*

9

*Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) (relief should not be based on predictions about foreign admissibility). Tofoni can use and has used Tourprodenter's Materials in the Argentine Criminal Proceedings, and the PROCELAC report confirms their value. Section 1782 does not require anything more.

Incredibly, Tourprodenter also challenges the relevance of Tourprodenter's Materials to the Argentine Criminal Proceedings. As Tofoni has repeatedly explained, Tourprodenter's Materials show that the Argentine criminal defendants violated Argentine law by engaging in multiple criminal acts. (Docs. 18-1 at ¶¶ 3-4, 26-1 at ¶¶ 4-7). Those criminal acts are the basis for the Argentine Criminal Proceedings. Third Baños Decl. ¶ 3. There can be no serious dispute about their relevance.

Finally, Tourprodenter challenges Tofoni's future participatory status in the Argentine Criminal Proceedings but cites no authority to support the conclusion that the "for use" requirement is unmet on this basis. To the contrary, *In re: Application of Bracha Found.*, 663 F. App'x 755 (11th Cir. 2016), confirms that the relevant inquiry is whether the applicant can presently participate in the foreign proceeding, not what might occur in the future. Rusconi concedes that Tofoni is currently the complainant in each of the Argentine Criminal Proceedings. *See* Third Rusconi Decl. at ¶11. A future challenge to that status does not impact the "for use" analysis.

10

The "for use" requirement is easily satisfied here, as are the other Section 1782 statutory requirements.

### III. The *Intel* Factors Favor Authorizing Use of Tourprodenter's Materials in the Argentine Criminal Proceedings

Tourprodenter asserts that the *Intel* discretionary factors weigh against granting the Motion for Authorization but it only addresses three of them. The *Intel* factors all must be considered together, and they all weigh in favor of granting the Motion for Authorization. *See Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 97 (2d Cir. 2009) (explaining that under *Intel*, no factor is given more weight than the others and no one factor should be dispositive); *see also In re Request for Jud. Assistance From the Trial Ct. No. 74 in Buenos Aires,* No. 24-MC-81454, 2024 WL 5485800, at *2 (S.D. Fla. Dec. 27, 2024) (same).

#### A. Synovus Is Not a Participant in the Foreign Proceedings

The first *Intel* factor favors authorization because Synovus is a nonparticipant in the Argentine Criminal Proceedings. Tourprodenter incomprehensively asserts that Synovus is a "participant" in the Argentine Criminal Proceedings because Tourprodenter's principals are defendants. The cases that Tourprodenter cites — *In re Inmobiliaria Tova, S.A.,* No. 20-24981-MC, 2021 WL 925517 (S.D. Fla. Mar. 10, 2021), and *El Poder Del Consumidor v. Coca-Cola Co.*, No. 1:24-CV-03665-TWT-RDC, 2024 WL 5089428 (N.D. Ga. Oct. 30, 2024) — explain that where the U.S. discovery target is a related entity of a foreign proceeding participant, the evidence

can be obtained from that participant abroad. That is not the case here. Synovus is not affiliated with any defendant in the Argentine Criminal Proceedings; it is a third-party bank that maintains Tourprodenter's accounts. Courts regularly authorize Section 1782 discovery from the bank that holds a foreign proceeding participant's accounts. *See, e.g. Lopes v. Lopes,* 180 Fed. App'x 874 (11th Cir. 2006); *In re: Application of Bracha Found.*, 663 Fed. App'x 755 (11th Cir. 2016). Because the evidence is held by a nonparticipant outside the foreign tribunal's compulsory process, the first *Intel* factor weighs in favor of granting the Motion for Authorization. *See In re Gonzalez*, 20-24628-MC, 2021 WL 3835180 (S.D. Fla. Apr. 14, 2021).

### B. Argentine Courts Are Receptive to U.S. Assistance

Tourprodenter's speculation about whether the Argentine Criminal Courts will ultimately admit Tourprodenter's Materials misses the point. Admissibility is not the question under the second *Intel* factor. The relevant inquiry is whether the foreign tribunal or government is receptive to U.S. judicial assistance as a matter of policy, not whether particular evidence will clear Argentine evidentiary rules.

Tourprodenter also misstates the burden. It faults Tofoni for failing to provide "authoritative" proof of receptivity, but the presumption runs the other way: courts assume receptivity "absent authoritative proof that a foreign tribunal would reject the evidence obtained." *Dep't of Caldas v. Diageo PLC,* 925 F.3d 1218, 1222 (11th

Cir. 2019). The Eleventh Circuit has further cautioned that a district court "should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect." *Id.*

Tourprodenter offers no authoritative proof to overcome that presumption. If anything, the record points in the opposite direction: Argentine courts regularly invoke U.S. judicial assistance to obtain evidence. *See, e.g., In re Request for Jud. Assistance From the Nat'l Ct. of Original Jurisdiction No. 68 in Buenos Aires*, 3:19-MC-31-J-39MCR, 2019 WL 5528394 (M.D. Fla. Oct. 25, 2019); *In re Request for Jud. Assistance from the First Instance Ct. in Com. Matters No. 28 in Buenos Aires*, 2022 WL 2306843 (M.D. Fla. May 11, 2022), (ECF No. 26). And Tourprodenter itself concedes that in the Argentine Criminal Proceedings, the court has affirmatively sought relevant evidence through letters rogatory. ECF No. 29 at 10-11 n.1.

Even though Tofoni need not prove receptivity, the PROCELAC Report independently confirms it. Argentina's federal economic crimes authority reviewed these Section 1782 proceedings, confirmed the procedural legitimacy of the discovery, recognized that Argentine courts may receive and evaluate evidence obtained through foreign procedures, and recommended that Tourprodentor's Materials serve as the starting point for formal international cooperation requests. In any event, any ultimate admissibility determination is for the Argentine Criminal

Courts to make under Argentine law, not a basis to deny Section 1782 assistance here. The second *Intel* factor weights in favor of granting the Motion for Authorization.

### C. The Motion for Authorization is not an Attempt to Circumvent Argentine Proof-Gathering Restrictions

Tourprodenter also misinterprets the third *Intel* factor, which considers whether the discovery that is sought is *affirmatively prohibited* in the foreign jurisdiction. *See In re Accent Delight*, 791 F. App'x 247, 251 (2d Cir. 2019). Tourprodenter does not identify any Argentine law that prohibits the disclosure or use of Tourprodenter's Materials. *Cf. In re Glozman,* No. 25-MC-24525, 2026 WL 291008, at *4 (S.D. Fla. Feb. 4, 2026) (no evidence of any Argentine law or rule prohibiting or limiting applicant's ability to obtain information through a Section 1782 application). Instead, Tourprodenter asserts that court-issued letters rogatory are required to obtain bank records. But the inability to obtain bank records in Argentina says nothing about whether discovery of those records is prohibited, and in fact the record reflects the opposite: Tofoni already presented the records to the Argentine Criminal Courts, Rusconi acknowledges the submission, and the PROCELAC report confirms the validity of Tofoni's presentation.

Moreover, Section 1782 does not impose a foreign discoverability requirement. *See Mees*, 793 F.3d at 303. Therefore, that the evidence cannot be obtained in Argentina except through letters rogatory does not impact Tofoni's

ability to obtain the evidence here. In fact, courts have declined to require Section 1782 applicants to use available letters rogatory procedures. *See In re Clerici,* 481 F.3d 1324, 1331 n.7 (11th Cir. 2007) ("A request for judicial assistance from a foreign tribunal can be, but is not required to be, made through the issuance of a letter rogatory.") *Travessia Securitizadora de Creditos Financeiros X S.A. v. Zimpel Granite & Marble Inc.,* No. 1:23-CV-5354-MHC-CCB, 2024 WL 6956432, at *6 (N.D. Ga. Sept. 18, 2024) (obtaining discovery via Section 1782 is still permissible even when the letters rogatory process under the Hague Convention is also available).[6]

Moreover, Tourprodenter has failed to meet its burden of submitting sufficient evidence to show that the Motion for Authorization was brought in bad faith or for purposes of harassment. *See In re SBK Art LLC*, 24 MISC. 147 (PAE)(RFT), 2025 WL 1537474, at *7 (S.D.N.Y. May 30, 2025), *aff'd* 168 F.4th 68 (2d Cir. 2026) (respondent has the burden to "bring evidence of such chicanery to the . . . court's attention.") (quotation omitted). "[I]t is not [Tofoni's] burden to demonstrate good faith," *In re Vale S.A.*, 20MC199JGKOTW, 2020 WL 404669, at *5 (S.D.N.Y. July

---

[6] It is unclear why Tourprodenter asserts that *Pimenta* supports its position because that decision reaffirmed that Section 1782 is "designed to provide discovery in aid of foreign litigation, *not* to provide discovery to justify the reopening of already completed foreign litigation." Opp. at 11 (quoting *In re Pimenta*, 942 F. Supp. 2d 1282, 1287 (S.D. Fla. 2013)). Here, there is no "already completed foreign litigation" that needs to be "reopen[ed]." The Argentine Criminal Proceedings are open and active.

20, 2020), though the record reflects that Tofoni is acting in good faith following his discovery of the Tourprodenter principals' sweeping criminal activity, and given the value of Tourprodenter's Materials to the Argentine Criminal Proceedings.

Moreover, the harassment inquiry under *In re Kivisto*, 521 F. App'x 886 (11th Cir. 2013) focuses on whether the Section 1782 request itself is a fishing expedition. Clearly it is not, as Tourprodenter's Materials reflect the Tourprodenter principals' criminal conduct and are the basis for the Argentine Criminal Proceedings. Since Tofoni has shown the relevance of the evidence it seeks, authorization should be granted. *See id.* (granting Section 1782 application because respondent "has not provided sufficient evidence to demonstrate bad faith," while applicant "has provided submissions sufficient to show relevance for purposes of discovery.").

Therefore, the third *Intel* factor weighs in favor of granting the Motion for Authorization.

### D.    Granting Authorization Is the Least Burdensome Option

Tourprodenter does not address the fourth *Intel* factor, which considers the burden imposed by the Section 1782 discovery *on the respondent*. That is because *no* burden would result from granting the Motion for Authorization. Synovus *already produced* the documents that Tofoni wishes to use in the Argentine Criminal Proceedings. On the other hand, if Tofoni is required to file a new Section 1782 application, there will be additional burden for Synovus, as Synovus will be required

16

to respond to a new subpoena. Therefore, the fourth *Intel* factor also weighs in favor of granting the Motion for Authorization.

## IV. In the Alternative, a Limited Stay Is Appropriate to Avoid Duplicative Litigation

If the Court declines to authorize Tofoni to use Tourprodenter's Materials in the Argentine Criminal Proceedings and instead requires a new Section 1782 application, the Court should enter a brief, limited stay pending resolution of that application. District courts possess inherent authority to manage their dockets and to stay proceedings to promote economy and fairness. *See Clinton v. Jones,* 520 U.S. 681, 706 (1997) (district court has "broad discretion to stay proceedings as an incident to its power to control its own docket"); *Chrysler Int'l Corp. v. Chemaly,* 280 F.3d 1358, 1360 (11th Cir. 2002) ("we stress the broad discretion district courts have in managing their cases"); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

Tourprodenter relies on the wrong standard. The factors in *Nken v. Holder*, 556 U.S. 418, 425-26 (2009), address a request for a stay pending appeal. Tofoni does not seek appellate relief; he seeks a short, discretionary docket-management stay to allow adjudication of a new Section 1782 application seeking the same relief at issue here. In this context, there is no rigid test; rather, the court "consider[s] the equities of the situation when exercising its discretion." *Curtis*, 226 F.3d at 138.

17

Those equities favor a stay. Absent a stay, a new Section 1782 proceeding would duplicate this dispute, precisely the inefficiency *Curtis* counsels courts to avoid. Requiring Tofoni to request return or destruction of Tourprodenter's Materials now would sow confusion in the Argentine Criminal Proceedings, where those materials are already in use and PROCELAC has confirmed the procedural validity of this Section 1782 application. Paragraph 9 of the Protective Order cannot undue that reality: Argentine courts will not remove from their dockets materials already filed, and prosecutors and courts can continue using information derived from Tourprodenter's Materials, including to pursue letters rogatory to Synovus using the blueprint that Tofoni provided. Third Baños Decl. ¶¶ 5, 7 Much of the information has also been reported in the media. A return-or-destruction exercise would thus be futile and burdensome, not restorative.

Nor will Tourprodenter – which is not a party in the Argentine Criminal Proceedings – suffer prejudice from a brief, limited stay pending a ruling on a new Section 1782 application. Tourprodenter's position will not worsen during a short pause. By contrast, denying a stay would risk duplicative litigation and procedural confusion abroad. A limited stay is the prudent, equitable course.

## V.    Tourprodenter's Cross-Motion to Compel Should Be Denied

For the same reasons explained above, Tourprodenter's cross-motion to compel should be denied. Tofoni has largely complied with paragraph 9 of the

Protective Order and explained why authorization to continue to use Tourprodenter's Materials in the Argentine Criminal Proceedings should be granted or, alternatively, why the Court should grant a limited stay pending resolution of a new Section 1782 application.

The cross-motion should also be denied to the extent that Tourprodenter seeks relief beyond what the Protective Order requires. The Court specifically rejected Tourprodenter's request that the required certification under paragraph 9(c) identify the recipients of Tourprodenter's Materials with particularity. *Compare* ECF No. 25 at 6 *with* ECF No. 4-1 at 3.[7]

## CONCLUSION

For the foregoing reasons, Petitioner Guillermo Luis Tofoni respectfully requests that the Court grant his Motion for Authorization to use Tourprodenter's Materials in the related Argentine proceedings and deny Tourprodenter's motion to compel compliance with the Protective Order.

Respectfully submitted,

**Dated:** June 1, 2026

GRUBMAN WARNER BERRY

*/s/ Scott R. Grubman*
Scott R. Grubman
Georgia Bar No. 317011
1834 Independence Square

---

[7] Tourprodenter's proposed deadline for compliance – two days – is also unreasonable.

19

Atlanta, GA 30338
(404) 233-4171
sgrubman@gwbfirm.com

*Counsel for Petitioner*
*Guillermo Luis Tofoni*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 1, 2026, the foregoing was filed with the Court's CM/ECF system that will serve a true and correct copy with all counsel of record.

/s/Scott R. Grubman
Scott R. Grubman