# EXHIBIT "1"

### FOURTH DECLARATION OF MAXIMILIANO A. RUSCONI

I, Maximiliano, declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1. I make this declaration based on my personal knowledge, acquired in the course of my professional work.

2. My prior declarations include a summary of my academic background, litigation and teaching experience, as well as other credentials in the fields of criminal law and criminal procedure. For clarity of the record, when I worked for the Argentine Public Prosecutor's Office, I held the positions of Prosecutor General for Criminal Policy and Director of the Prosecutorial Unit for the Investigation of Tax Crimes and Smuggling.

3. I represent Javier Horacio Faroni and Erica Gabriela Gillette, husband and wife, in Criminal Case No. 66191/2025 and in other related or connected cases pending before the Argentine courts.

4. I make this declaration for the purpose of addressing what I consider to be inaccurate statements made by Guillermo Luis Tofoni's ("Tofoni") attorney, Alberto Baños ("Baños"), in his declaration submitted on June 1, 2026.

5. First, contrary to Baños's insinuations, no Tourprodenter executive is facing criminal charges in Argentina in connection with the documents obtained by Tofoni in his discovery proceedings in the United States. Mr. Faroni and Ms. Gillette have the status of reported parties in Criminal Case No. 66191/2025, but they have not been charged with any crime.

6. Second, it is not true that Tofoni stated in the case record, on May 27, 2026, that there is a Protective Order governing the use of the Tourprodenter documents produced by Synovus Bank and that those documents may not be used

1

in a criminal case in Argentina. In CCC Case No. 66191/2025, Tofoni gave a statement before the Prosecutor's Office on May 26, 2026, and, during that statement, he did not submit any filing related to the Protective Order. Rather, his statement was that the Georgia judge had indicated to him that any use of the information provided by Synovus Bank outside the commercial case against AFA would require judicial authorization, and that he had requested such authorization, with the request still pending resolution. Thus, Tofoni not only refrained from asking the Prosecutor's Office to adopt measures consistent with the Protective Order, but also suggested that the issue regarding the use of the information had not yet been resolved by the U.S. courts.

7.      It is true, as Baños notes, that during Tofoni's witness testimony of May 26, 2026, the Prosecutor's Office did not express any concern regarding the use of the Tourprodenter documents in Case No. 66191/2025. However, this is because that proceeding was not intended to analyze the validity, admissibility, or use of those documents. No one asked the Prosecutor's Office to rule on that issue, nor did that procedural stage constitute an opportunity for it to do so.

8.      Apart from that statement by Tofoni in Case No. 66191/2025, I am not aware that he made any other representation or filed any petition in that case record in relation to the Protective Order. I do not know whether he made similar filings in other cases, since my clients have only been linked to Case No. 66191/2025, subject to the exception I set forth below.

9.      Although I do not have access to Case No. 360/2026—*because neither Javier Faroni nor Ms. Érica Gillette is charged in that case*—I have become aware of the content of the statement given by Tofoni on May 27, 2026, *that is, the day after the statement he gave in Case No. 66191/2025*. I obtained that knowledge because the statement dated May 27, 2026, was forwarded and incorporated into the other case, in which I am

2

indeed defense counsel, namely Case No. 66191/2025. Specifically, in the statement Tofoni gave in Case No. 360/2026, Tofoni referred to a "USB drive" that he had allegedly delivered, which "… *contains the receipts for the money transfers received by Tourprodenter in the bank accounts it held at Citi Bank, Bank of America, Synovus Bank, and JP Morgan, in the United States*…" and stated that "… *this information was obtained through the Discovery system, as a result of a request that I made in the United States*…" acknowledging that he even provided a copy of the "PROCELAC report" produced in the context of Case No. 66191/2025, despite the fact that the report specifically stated that it was to be used exclusively for internal use by the Public Prosecutor's Office.

10.    In the statement given in Case No. 360/2026, Tofoni merely stated that, in the case of Synovus Bank, there was a limitation on providing documentation relating to the bank transfers; however, he did not attach a copy of the protective order, nor did he specifically set out the scope of that order, much less specify that, when initiating the Discovery process, he had stated that the purpose of the request was limited to obtaining information to be submitted in the commercial proceeding he has pending against AFA.

11.    Third, Baños cites the report of the Office of the Prosecutor for Economic Crime and Money Laundering (PROCELAC), dated April 14, 2026, to insinuate that some Argentine authority has somehow endorsed the use of the Tourprodenter documents in criminal proceedings conducted in Argentina. That has not occurred. PROCELAC is neither a judicial authority nor the Prosecutor's Office in charge of the case; it is a technical body of the Public Prosecutor's Office that assists prosecutors in investigations involving economic crime and money laundering. For this reason, the report to which he refers was issued under the legend "for internal MPF use only."

3

12.     PROCELAC never stated that it had verified the legitimacy of the use of the information provided by Tofoni. On the contrary, what it stated was that the documentation "does not appear, in principle," to be the product of clandestine acquisition, an informal leak, or illegitimate access to financial information, but rather the result of discovery proceedings conducted in the United States.

13.     In addition, the cited report—issued in one of the multiple criminal cases before the Protective Order was entered—does, in fact, conclude that the information provided by Tofoni cannot be treated as evidence and must be corroborated through the appropriate international cooperation mechanisms. In that regard, the report concludes that the information provided by Tofoni should be used as a "roadmap for official requests for validation, corroboration, and international cooperation."

14.     Fourth, Baños argues that, regardless of whether the Tourprodenter documents are admissible in Argentina, they may be used because they were submitted by Tofoni in the Argentine criminal cases. That argument confuses the factual possibility of submitting documentation into a case record with the legal question of whether such documentation may be lawfully used. The fact that Tofoni submitted certain documents in a criminal case does not show that he was authorized to do so, or that such documents are admissible or may be considered valid evidence. Precisely for that reason, PROCELAC concluded that the information provided by Tofoni should not be considered evidence.

15.     Finally, Baños's assertions that an Argentine court lacks the authority to remove documents from a judicial case file are incorrect. On the contrary, the judge presiding over the case may order the exclusion or removal from the record of documentary materials incorporated in violation of due process guarantees or of the rules governing the obtaining and introduction of evidence.

4

This is particularly true when the information is protected by confidentiality regimes or legal secrecy. Although only a competent judicial authority may order, in the cases provided for by law, the lifting of bank or securities secrecy, this does not mean that a party is authorized to unilaterally introduce into a case file information subject to such protections. On the contrary, if a party submits documentation obtained or used in contravention of those restrictions, the court may—and, where appropriate, must—exclude it from the proceedings and adopt the appropriate measures to investigate the circumstances under which it was obtained and introduced. A recent example of this can be found in Case No. CFP 5277/2025/474/1, decided on May 7, 2026, in which the Federal Court of Campana ordered the "exclusion as an item of evidence" of a computer storage device containing allegedly accounting and banking information.

16.     I have in my possession the documents from Criminal Case No. 66191/2025 mentioned above; however, I have refrained from attaching them to this Declaration in view of the confidentiality duties incumbent upon me in the Criminal Case, without prejudice to the need to inform the U.S. courts of the above-mentioned irregularities.

Executed in the city of Buenos Aires, Argentina, on the 1st day of June 2026.

**Maximiliano Rusconi**

RUSCONI
Maximiliano
Adolfo

Digitally signed by RUSCONI
Maximiliano Adolfo
DN: SERIALNUMBER=CUIL
20180648020, C=AR, CN=RUSCONI
Maximiliano Adolfo
Reason: I am the author of this document
Location:
Date: 06/12/2026, 9:15:37 PM
Foxit Reader Version: 9.1.0

[Logo: PDF]

5

**MORNINGSIDE**
A Questel Company

# TRANSLATION CERTIFICATION

Date: 2026/06/15

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Spanish (Latin America)

To:

- English (USA)

The documents are designated as:

- '4ta declaración de Maximiliano A. Rusconi-VF-.pdf'

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of **Samuel Wu**, Managing Director

Questel Confidential: Limited External Use

299 South Main Street, Suite 1300
Salt Lake City, UT 84111

# CUARTA DECLARACIÓN DE MAXIMILIANO A. RUSCONI

Yo, Maximiliano Rusconi, declaro bajo pena de perjurio conforme a las leyes de los Estados Unidos de América que lo siguiente es verdadero y correcto según mi leal saber y entender:

1. Formulo la presente declaración sobre la base de mi conocimiento personal, adquirido en el ejercicio de mi labor profesional.

2. Mis declaraciones anteriores incluyen un resumen de mi formación académica, experiencia en litigios y docencia, así como otras credenciales en el campo del derecho penal y del derecho procesal penal. Para claridad del expediente, cuando trabajé para el Ministerio Público Argentino ejercí los cargos de Fiscal General de Política Criminal y Director de la Unidad Fiscal de Investigación de Delitos Tributarios y Contrabando.

3. Represento a Javier Horacio Faroni y a Erica Gabriela Gillette, marido y mujer, en la Causa Penal N.º 66191/2025 y en otras causas derivadas o conexas que tramitan ante la justicia argentina.

4. Formulo la presente declaración con el propósito de referirme a lo que considero son afirmaciones desacertadas por parte del abogado de Guillermo Luis Tofoni ("Tofoni"), Alberto Baños ("Baños"), en su declaración rendida el 1º de Junio de 2026.

5. Primero, contrariamente a las insinuaciones de Baños, ningún ejecutivo de Tourprodenter se encuentra enfrentando cargos penales en Argentina en relación con los documentos obtenidos por Tofoni en sus procesos de *discovery* en los Estados Unidos. El Sr. Faroni y la Sra. Gillette revisten la calidad de denunciados en la Causa Penal N.º 66191/2025, pero no han sido acusados de delito alguno.

6. Segundo, no es cierto que Tofoni haya manifestado en el expediente, el 27 de mayo de 2026, que existe una orden de protección (*Protective Order*) que regula el uso de los documentos de Tourprodenter producidos por Synovus Bank y que dichos documentos no pueden ser utilizados

1

en una causa penal en la Argentina. En la causa CCC N.º 66191/2025, Tofoni declaró el 26 de mayo de 2026 ante la Fiscalía y, durante dicha declaración, no presentó escrito alguno relacionado con la *Protective Order*. Igualmente, su declaración fue que el Juez de Georgia le indicó que cualquier uso de la información suministrada por Synovus Bank fuera del caso comercial contra la AFA requería autorización judicial, y que él había solicitado dicha autorización, encontrándose el pedido aún pendiente de resolución. De este modo, Tofoni no solo se abstuvo de solicitar a la Fiscalía la adopción de medidas consistentes con la *Protective Order*, sino que sugirió que la cuestión sobre el uso de la información aún no había sido resuelta por la justicia estadounidense.

7.    Es cierto, como señala Baños, que durante la declaración testimonial de Tofoni del 26 de mayo de 2026 la Fiscalía no expresó preocupación alguna respecto del uso de los documentos de Tourprodenter en la Causa 66191/2025. Sin embargo, ello obedece a que dicha instancia no tenía por objeto analizar la validez, admisibilidad o utilización de esos documentos. Nadie solicitó a la Fiscalía que se pronunciara sobre esa cuestión, ni aquella instancia procesal constituía una oportunidad para que lo hiciera.

8.    Aparte de dicha declaración de Tofoni en la Causa N.º 66191/2025, no tengo conocimiento de que haya formulado ninguna otra manifestación ni presentado petición alguna en ese expediente en relación con la *Protective Order*. Desconozco si ha efectuado presentaciones similares en otras causas, ya que mis clientes únicamente han sido vinculados a la Causa N.º 66191/2025, con la salvedad que seguidamente expongo;

9.    Si bien no tengo acceso a la causa N.º 360/2026 *-porque ni Javier Faroni ni la señora Érica Gillette se encuentran imputados allí-*, he tomado conocimiento del contenido dela declaración prestada por Tofoni el pasado 27 de mayo de 2026 *-es decir, al día siguiente de su declaración prestada en la Causa N.º 66191/2025-*. Ese conocimiento fue obtenido porque la declaración de fecha 27 de mayo de 2026 fue remitida e incorporada a la otra causa, en la que sí

2

soy letrado defensor (Causa N.º 66191/2025). Concretamente, en la declaración que Tofoni prestó en la causa N.º 360/2026 Tofoni se refirió a un "pendrive" que habría entregado, que *"... contiene los comprobantes de las transferencias de dinero recibidas por Tourprodenter en las cuentas bancarias que ésta tenía en Citi Bank, Bank of America, Synovus Bank y el JP Morgan, en Estados Unidos..."* y expresó que *"... esta información, se obtuvo a través del sistema Discovery, a raíz de una solicitud que yo realicé en Estados Unidos..."* reconociendo que, inclusive, aportó una copia del "informe de la PROCELAC" producido en el marco de la causa N.º 66191/2025 a pesar de que específicamente el informe consignaba que su utilización correspondía exclusivamente al uso interno del Ministerio Público Fiscal;

10.    En la declaración prestada en la causa N.º N.º 360/2026 Tofoni se limitó a referir que, en el caso de Synovus Bank existía una limitación para aportar documentación relativa a las transferencias bancarias; sin embargo no acompañó una copia de la orden de protección, ni plasmó concretamente los alcances de esa orden, ni mucho menos especificó que en ocasión de iniciar el proceso de Discovery había consignado que el objeto de la solicitud estaba ceñido a obtener información para ser presentada en el proceso comercial que mantiene con la AFA.

11.    Tercero, Baños cita el informe de la Procuraduría de Criminalidad Económica y Lavado de Activos (PROCELAC) de fecha 14 de abril de 2026 para insinuar que alguna autoridad argentina ha avalado, de algún modo, el uso de los documentos de Tourprodenter en procesos penales tramitados en la Argentina. Ello no ha ocurrido. La PROCELAC no constituye una autoridad judicial ni la fiscalía a cargo de la causa; se trata de un órgano técnico del Ministerio Público Fiscal que brinda asistencia a los fiscales en investigaciones de criminalidad económica y lavado de activos. Por esta razón, el informe al que hace referencia fue emitido bajo la leyenda "solo para uso interno del MPF".

12.     PROCELAC nunca afirmó haber verificado la legitimidad del uso de la información aportada por Tofoni. Por el contrario, lo que señaló fue que la documentación "no aparece, en principio", como producto de una obtención clandestina, una filtración informal o un acceso ilegítimo a información financiera, sino como el resultado de procedimientos de *discovery* tramitados en los Estados Unidos.

13.     Además, el informe citado —emitido en una de las múltiples causas penales antes del dictado de la *Protective Order*—concluye, de hecho, que la información suministrada por Tofoni no puede ser tenida como prueba y debe ser corroborada mediante los mecanismos de cooperación internacional correspondientes. En ese sentido, el informe concluye que la información suministrada por Tofoni debe ser utilizada como una "hoja de ruta para requerimientos oficiales de validación, corroboración y cooperación internacional."

14.     En cuarto lugar, Baños sostiene que, independientemente de si los documentos de Tourprodenter son admisibles en Argentina, estos pueden ser utilizados porque fueron presentados por Tofoni en las causas penales argentinas. Ese argumento confunde la posibilidad fáctica de presentar documentación en un expediente con la cuestión jurídica de si dicha documentación puede ser legalmente utilizada. El hecho de que Tofoni haya aportado determinados documentos a una causa penal no demuestra que estuviera autorizado a hacerlo, ni que tales documentos sean admisibles o puedan ser considerados prueba válida. Precisamente por ello, la PROCELAC concluyó que la información aportada por Tofoni no debía ser considerada prueba.

15.     Finalmente, son incorrectas las afirmaciones de Baños en el sentido de que un tribunal argentino carece de facultades para remover documentos de un expediente judicial. Por el contrario, el juez de la causa puede ordenar la exclusión o el desglose de elementos documentales incorporados en violación de las garantías del debido proceso o de las reglas que regulan la obtención e incorporación de la prueba. Ello es particularmente cierto cuando se trata de

4

información amparada por regímenes de confidencialidad o secreto legal. Si bien únicamente una autoridad jurisdiccional competente puede disponer, en los casos previstos por la ley, el levantamiento del secreto bancario o bursátil, ello no significa que una parte quede habilitada para incorporar unilateralmente a un expediente información alcanzada por tales protecciones. Por el contrario, si una parte acompaña documentación obtenida o utilizada en contravención de dichas restricciones, el tribunal puede—y, en su caso, debe—excluirla del proceso y adoptar las medidas que correspondan para investigar las circunstancias de su obtención e incorporación. Un ejemplo reciente de ello se encuentra en la causa CFP 5277/2025/474/1 (resuelta el 7 de mayo de 2026), en la que el Juzgado Federal de Campana dispuso "excluir como elemento de prueba" un dispositivo de almacenamiento informático que contenía información presuntamente contable y bancaria.

16.     Obran en mi poder los documentos de la Causa Penal N.º 66191/2025 mencionados anteriormente; sin embargo, me he abstenido de adjuntarlos a la presente Declaración en atención a los deberes de confidencialidad que me asisten en la Causa Penal, sin perjuicio de la necesidad de poner en conocimiento de las cortes estadounidenses las irregularidades antes mencionadas.

Firmado en la ciudad de Buenos Aires, Argentina, a los 1 días del mes de junio de 2026.


**Maximiliano Rusconi**

5